**James Bill PECK, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–96–00035–CR.**

Court of Appeals of Texas,
Tyler.

May 31, 1996.

James Mills, Chandler, for appellant.

Donna R. Little Bennett, Athens, for appellee.

HOLCOMB, Justice.

James Bill Peck, Jr. ("Appellant") was convicted by a jury of the offense of murder. The jury assessed punishment at 20 years' confinement in the Texas Department of Criminal Justice—Institutional Division, and a fine of $10,000. Appellant presents three points of error on appeal. We will **affirm**.

On February 5, 1995, Appellant shot and killed Jerry Lee Jessie (the "victim" or "Jessie"). On the evening prior to the shooting, Appellant loaned his vehicle to Jessie so that Jessie could go to the store to get beer and cigarettes. Jessie did not return with Appellant's car that evening. Jessie had been arrested for driving while intoxicated and placed in the Henderson County Jail. Upon his release from jail the next morning, Jessie went to the home of Appellant. Appellant looked out of the window, announced that Jessie was outside, opened a gun case, and removed a gun. Appellant cocked the gun as he went outside to meet Jessie. Jessie did not make any threats to Appellant and did not carry a weapon. Appellant killed Jessie with a firearm. After his arrest, Appellant signed a written confession. At the trial, the State offered Appellant's confession into evidence.

■ In his first point of error, Appellant claims that the trial court erred in overruling his motion to quash the indictment. Appellant contends the indictment was defective because it was not signed by the grand jury foreman, did not allege an offense, and did not allege the manner and means of his commission of the offense. We disagree.

Appellant's indictment for the murder of Jerry Lee Jessie stated:

James Bill Peck, Jr. hereinafter styled Defendant, on or about the 5th day of February, 1995, and before the presentation of this indictment, in the County and State aforesaid, did then and there intentionally and knowingly cause the death of an individual, namely, Jerry Lee Jessie, by shooting Jerry Lee Jessie, the Defendant did then and there use a firearm.

The assistant foreman of the grand jury signed the indictment.

■ An indictment is sufficient if it is signed officially by the foreman of the grand jury. TEX.CODE CRIM. PROC. ANN. art. 21.02(9) (Vernon 1989). However, the absence of the foreman's signature does not invalidate an indictment that otherwise fulfills legal requirements. *Tatmon v. State,* 815 S.W.2d 588, 590 (Tex.Cr.App.1991).

■ "An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged ..." TEX.CODE CRIM. PROC. ANN. art. 21.11 (Vernon 1989). In order to correctly allege an offense, an indictment must allege each element of the offense. TEX.CODE CRIM. PROC. ANN. art. 21.03. As a general rule, an indictment in the language of the statute creating and defining the charged offense will be sufficient. *Beck v. State,* 682 S.W.2d 550, 554 (Tex.Cr.App.1985).

■ A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 1994). "An indictment charging the offense of murder must allege the means used to commit the offense if such means are known to the grand jury." *Hawkins v. State,* 660 S.W.2d 65, 74 (Tex.Cr.App.1983). In order to prove that omission of the manner and means used caused reversible error, "an appellant must show that the omission of the requested information had a deleterious impact on his ability to prepare a defense." *Chambers v. State,* 866 S.W.2d 9, 17 (Tex.Cr.App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994).

The trial court did not err in overruling Appellant's motion to quash his indictment. The indictment exactly tracked the language of the statute defining the crime of murder. Further, such language is sufficient to give notice to a person of common understanding that he is charged with the offense of murder. Appellant's claim that the indictment fails to specify the manner and means used to commit the offense has no support in the record. The indictment plainly states that Appellant used a firearm in the commission of the offense. Additionally, as noted by the Court of Criminal Appeals in *Tatmon*, the absence of the signature of the grand jury foreman is not fatal to an otherwise valid indictment. We therefore overrule Appellant's first point of error.

■ In his second point of error, Appellant alleges that the trial court committed error in not allowing the testimony of Officer Brent Reneau as to the character and reputation of the victim. We disagree.

At trial the State called Officer Brent Reneau. Reneau testified that he had stopped a vehicle driven by Willie Craker for speeding on the morning of February 5, 1995. Appellant was a passenger in Craker's vehicle. When asked what they were doing with a pipe between them in the front seat, Appellant replied that he was going to kill Jessie. On cross-examination, Reneau testified that Jessie's reputation in the community for being a peaceful and law abiding citizen was good and that Reneau had never had any problems with Jessie. Outside the presence of the jury, Appellant indicated to the trial court that he wished to ask Officer Reneau "if Mr. Jessie had a reputation in the community as a troublemaker." At a hearing on the admissibility of Reneau's testimony, the following exchange occurred between Appellant's counsel and Reneau:

RENEAU: I mean, he [Jessie] was—the reputation—I mean, was known, I guess, was like a troublemaker sometimes. But as far as my dealings with him he always treated me with respect and I treated him back with respect.

APPELLANT: But he was known as a troublemaker?

RENEAU: Just one of the guys around there, you know, but as far as I know, you know, the only time he was ever arrested in Seven Points was for [traffic] warrants and warrants only.

This was Reneau's only reference to Jessie's reputation as troublemaker, and thus, the only evidence considered by the trial court. The State objected that the evidence was not relevant, and the trial court sustained that objection. The court further stated, "I'm not ruling out it being admissible at some later date during the trial and when the court believes that it becomes admissible." Appellant did not attempt to offer Reneau's testimony again.

■ In a murder case, when there is some evidence of an act on the part of the victim sufficient to raise an issue as to whether the defendant justifiably caused the victim's death in self-defense, evidence of the victim's general reputation for being of violent character and prior specific acts of violence by the victim are admissible. *Gutierrez v. State*, 764 S.W.2d 796, 798 (Tex.Cr. App.1989). This type of evidence is admissible to show the reasonableness of a defendant's claim of apprehension of danger or to show who was the aggressor at the time of the killing. *Id.* A defendant must have been aware of the victim's past aggressive conduct in order for such conduct to be admissible about the defendant's state of mind. *Stone v. State*, 751 S.W.2d 579, 585 (Tex.App.— Houston [1st Dist.] 1988, pet. ref'd). Only the victim's reputation for violence and commission of prior specific acts of violence which are known to the defendant are probative of whether the defendant reasonably believed the force used was necessary to protect himself. *Gutierrez*, 764 S.W.2d at 798. In order for evidence of prior violent acts or the victim's reputation for violence to be admissible, there must be evidence of some act of aggression by the victim. *Stone*, 751 S.W.2d at 585; *Kolar v. State*, 705 S.W.2d 794, 798 (Tex.App.—Houston [1st Dist.] 1986, no pet.).

■ The trial court properly excluded the proposed testimony. A reputation for being a troublemaker is not a violent or aggressive act by itself and thus is not relevant to show

that victim was the first aggressor. Neither does the proposed testimony show the reasonableness of Appellant's claim of apprehension of danger. At the time the trial court refused to allow Reneau to testify regarding the victim's reputation for being a trouble-maker, there was no evidence of any act of aggression by the victim. Appellant was the first witness to testify about an aggressive act by the victim. Appellant testified after Reneau. Appellant failed to re-offer the testimony of Reneau after his testimony raised the issue of self-defense. Appellant did not lay the proper predicate for admissibility of Reneau's testimony, and the trial court's ruling was proper. We therefore overrule Appellant's second point of error.

In his third point of error, Appellant alleges that the trial court erred in its instructions to the jury in the guilt/innocence phase of the trial. Specifically, Appellant complains that the court should have instructed the jury on Appellant's theories of "no intent" and "shoot to scare/stop," and that the State was bound by the statements in Appellant's confession unless shown by evidence beyond a reasonable doubt to be untrue. We disagree.

Appellant requested at trial and contends on appeal that the trial court should have given the following instructions to the jury:

> ... if you should find from the evidence beyond a reasonable doubt that the defendant shot and killed Jerry Lee Jessie, but you further find from the evidence or you have a reasonable doubt thereof that the defendant shot down toward the ground and did not intend to kill or shot down toward the ground or that he did not intend to kill Jerry Lee Jessie but only shot to scare or stop the deceased then you are instructed that the defendant would not be guilty of murder ...

A defendant has a right to an affirmative instruction on every defensive issue raised by the evidence whether the evidence is produced by the state or by the defense. *Harris v. State*, 465 S.W.2d 175, 177 (Tex.Cr.App.1971). However, a defendant is not enti-

tled to instructions that are merely repetitive of others submitted by the court.

Both Appellant's requested "no intent" and "shoot to scare or stop" instructions were merely variations of instructions presented to the jury in the court's charge. The court instructed the jury on the meaning of "intentionally" and "knowingly," and further that unless the jury found that Appellant intentionally and knowingly caused the death of Jessie, the jury should find Appellant not guilty. If the jury believed that Appellant either had "no intent" to kill Jessie or "shot only to scare or stop" Jessie, then, based on the court's charge, the jury would have returned a verdict of not guilty. Because the Appellant's requested instructions were merely duplicative of the court's other instructions, Appellant was not entitled to submission of such instructions.

In addition to the requested instructions regarding Appellant's intent, Appellant requested that the trial court give the jury an instruction that the State is bound by any exculpatory statements in Appellant's confession unless the exculpatory statement is shown by the evidence beyond a reasonable doubt to be untrue. Appellant relies upon the "voucher rule" which required the State to disprove beyond a reasonable doubt all exculpatory assertions in a defendant's confession if the State offered the confession into evidence. *Hernandez v. State*, 819 S.W.2d 806, 813 (Tex.Cr.App.1991), *cert. denied*, 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992). After the promulgation of Texas Rule of Criminal Evidence 607, the State is no longer required to disprove exculpatory statements introduced by the State. *Ibanez v. State*, 749 S.W.2d 804, 807 n. 3 (Tex.Cr.App.1986).[1] We overrule Appellant's third point of error.

The judgment of the trial court is **affirmed.**

---

1. The voucher rule is no longer valid in Texas after September 1, 1986, the effective date of Rule 607 of the Texas Rules of Criminal Evidence.