**Kevin Lee BUHL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–96–257–CR**

Court of Appeals of Texas,
Waco.

Jan. 21, 1998.

929

Walter M. Reaves, Jr., Waco, for appellant.

John W. Segrest, Criminal District Attorney, Crawford Long, Asst. District Attorney, Mike Freeman, Asst. District Attorney, Laura M. Alaniz, Asst. District Attorney, Waco, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Kevin Buhl was convicted by jury of capital murder. *See* TEX. PEN.CODE ANN. § 19.03 (Vernon 1994). Because the State did not seek the death penalty, the trial judge sentenced Buhl to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX.CODE CRIM. PROC. ANN. art. 37.071, § 1 (Vernon Supp.1998).

This court dismissed Buhl's first appeal for want of jurisdiction because his notice of appeal was not timely filed. *See Buhl v. State*, 10–96–067–CR (Tex.App.—Waco April 24, 1996, no pet.) (not designated for publication). Following our dismissal, Buhl sought a writ of habeas corpus claiming that his attorney rendered ineffective assistance by failing to file a timely notice of appeal. *See Ex Parte Kevin Buhl*, No. 72,514 (Tex.Crim. App. October 16, 1996) (not designated for publication). The Court of Criminal Appeals granted Buhl's application for relief and ordered that Buhl be permitted to file an out-of-time appeal. *Id.* Buhl now raises seven points of error attacking his conviction and sentence.

### I. Factual Background

On March 19, 1995, Buhl was in Cameron Park in Waco when he noticed a car containing Robert Evans and three other men being driven through the park. Because Buhl had a history of problems with Evans, he watched the car when it pulled into a parking lot close to where he was standing. After Buhl saw Evans, the passenger in the front-

seat of the car, stare at him and appear to be raising up in his seat in a manner that Buhl thought indicated Evans was about to shoot him, Buhl ran toward the car firing a gun at Evans. Evans was shot six times and died from these gunshot wounds. After shooting Evans, Buhl saw Dawood McCutcheon, who was sitting in the back-seat behind Evans, bend down as if to reach for something on the floor of the car, so Buhl fired several shots toward McCutcheon. McCutcheon was hit in the head and arm by gunshots, and he died from these injuries.

The other two men in the car were Corry Richardson, the driver of the vehicle, and Jason Ervin, the back-seat passenger sitting behind Richardson. Both Richardson and Ervin fled the car during the shooting. Richardson was not wounded during this incident, but Ervin was struck by bullets in his legs and back. During their investigation of the shooting, the police did not find a gun in Evans' or McCutcheon's possession or in the vehicle. While gathering evidence, the police collected thirteen .38 shell casings in the vehicle and parking lot which presumably came from Buhl's gun, although his gun was not located by police.

At trial Buhl claimed he acted in self-defense in shooting both Evans and McCutcheon. Buhl testified that Evans had continued to threaten him since the two men fought in 1994. Buhl explained that Evans had been involved with his sister, Traci, and they fought one day after Evans had been cursing at Traci. Since that time, Buhl told the jury, Evans continued to harass and threaten him by chasing his car, by driving slowly around a car wash Buhl was using, by pulling a gun on him near Dewey Park, and by firing gunshots above his head at a club after Evans asked the spectators whether they would "tell" if he killed Buhl. Because of these past encounters, Buhl testified that he believed Evans was about to shoot him on March 19, 1995 in Cameron Park when Evans raised his body and arm. Furthermore, Buhl stated that when he fired at McCutcheon he believed McCutcheon was reaching for a gun on the floor of the car. Buhl did not have a history of problems with McCutcheon except

Buhl believed McCutcheon was with Evans when Evans chased his car. Finally, Buhl averred that his shooting of Ervin in the legs and back was accidental.

## II. Points of Error

### A. Evidence that Evans abused his son

In his first and second points of error, Buhl contends that the trial court erred in refusing to admit evidence showing Evans abused his son. Buhl's first point claims that this evidence is relevant to his state of mind and to show that Evans was the aggressor during their confrontation. His second point asserts that the court erred in excluding the evidence of abuse because it shows the relationship between the parties.

At the beginning of the trial, the judge granted the State's motion in limine to prevent the defense from going into extraneous bad acts committed by Evans without first approaching the bench. Then, when the defense called Traci Buhl to testify, defense counsel approached the bench to inform the court that he anticipated the witness testifying about Evans' abuse of their child. In response, the State made a relevance objection and a rule 403 objection. *See* TEX. R.CRIM. EVID. 402, 403. The court sustained the State's objection to the abuse evidence, but Buhl never made an offer of proof summarizing the child abuse to which Traci Buhl would have testified.

Later during the trial, Buhl called Andrea Wilson, a case worker for the Texas Department of Protective and Regulatory Services (TDPRS), and she was originally questioned by defense counsel outside the jury's presence. Wilson described the allegations of child abuse which had been made against Evans, *i.e.*, Evans had placed his hand over the child's mouth, shaken him, and cursed at him. Also, workers at the child's day care center reported to TDPRS that the child became ill once after Evans dropped him off, and large knots were visible on the back of the child's head and leg. Wilson further explained how Evans had become very upset with her and the Buhl family[1] during

1. Traci Buhl, Kevin's sister, was the child's

mother, and the child was eventually placed by

TDPRS' investigation into the possible child abuse.

On appeal Buhl has specifically argued that Wilson's testimony about the abuse allegations should have been admitted at trial. In response, the State claims that Buhl never offered Wilson's testimony about the abuse allegations and the trial court made no ruling excluding this evidence. In support of its argument that Wilson's testimony about the abuse was not offered, the State points out that, at the conclusion of Wilson's testimony outside the presence of the jury, defense counsel stated he did not "want all of this testimony in," but he wanted to offer before the jury testimony that: (1) Wilson went to see Robert Evans and Traci Buhl regarding their child, (2) Wilson spoke to Evans and saw him threatening the Buhl family, as well as being verbally abusive, and (3) in March 1995 TDPRS had a safety plan that prevented Evans from being alone and unsupervised with his son.

We agree with the State that defense counsel's statements summarizing the testimony of Wilson he wished to present did not clearly identify the abuse allegations against Evans as being testimony he wanted to offer. Also, we agree that there is no specific ruling from the trial judge excluding Wilson's testimony about the abuse evidence. *See* TEX. R.APP. P. 33.1(a). However, because the record is somewhat ambiguous on this point and because the trial court also excluded testimony from Traci Buhl about the abuse, out of an abundance of caution, we will assume, *arguendo*, that the abuse allegations against Evans were offered and excluded by the trial judge in order to briefly address appellant's points of error.

■ When there is some evidence supporting a defendant's claim that a shooting was justified because of self-defense, evidence about the victim's reputation for violence or prior acts of violence may be admitted into evidence. *Gutierrez v. State*, 764 S.W.2d 796, 798 (Tex.Crim.App.1989); *Espinoza v. State*, 951 S.W.2d 100, 101 (Tex. App.—Corpus Christi 1997, pet. ref'd); *Peck v. State*, 923 S.W.2d 839, 842 (Tex.App.—

Tyler 1996, no pet.). The victim's reputation and prior acts may be used to show the defendant reasonably believed force was immediately necessary to protect himself or to demonstrate that the victim was the first aggressor. *Id.* However, the defendant must know about the victim's prior violent acts or reputation at the time of the shooting in order for this evidence to be relevant to his belief that force was immediately necessary to protect himself. *Id.*

■ In the instant case, we believe there is no evidence Evans was the first aggressor at the time of the shooting. Buhl testified that Evans simply stared at him, raised up in his seat, and raised his elbow. This behavior of Evans, who was later found without a gun, does not suggest Evans was the aggressor at the time of the shooting. *Espinoza*, 951 S.W.2d at 101–02; *Fry v. State*, 915 S.W.2d 554, 561 (Tex.App.—Houston [14th Dist.] 1995, no pet.). Therefore, specific acts of violence Evans may have committed in abusing his son would not be admissible to suggest that Evans was the first aggressor at the time of the shooting.

Moreover, the trial judge did not err in excluding Wilson's or Traci Buhl's testimony about the possible child abuse as it related to Buhl's state of mind because Buhl has not identified any evidence in the record demonstrating that he knew at the time of the shooting about the specific acts of violence Wilson's or Traci Buhl's testimony would have discussed. *See Peck*, 923 S.W.2d at 842 ("A defendant must have been aware of the victim's past aggressive conduct in order for such conduct to be admissible about the defendant's state of mind.").

■ Furthermore, even if Buhl did know about these acts of violence, any error which occurred as a result of the exclusion of the evidence that Evans may have shaken or hit his son is undoubtably harmless as Evans' continual threats directed specifically at Kevin Buhl, which were discussed at length during the trial, were much stronger evidence that Buhl had a reasonable belief force was necessary to defend himself. Thus, it is evident that the exclusion of the abuse evidence

TDPRS with Alice Buhl, the grandmother.

did not affect a substantial right of the appellant. *See* Tex.R.App. P. 44.2(b); *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997); *see also Fowler v. State,* 958 S.W.2d 853, 864–66 (Tex.App.—Waco 1997, pet. filed). Consequently, Buhl's first point of error is overruled.

Buhl argues in his second point of error that evidence Evans may have abused his son is admissible based on article 38.36 of the Code of Criminal Procedure which permits the defendant to offer evidence showing the prior relationship between the parties. *See* Tex.Code Crim. Proc. Ann. art. 38.36(a) (Vernon Supp.1998). Courts have construed article 38.36 and its predecessor, section 19.06 of the Penal Code, as rules of relevance which do not change "the rules of evidence which apply, or the *way* in which they apply in any given homicide case." *Fielder v. State,* 756 S.W.2d 309, 318 (Tex.Crim.App.1988); *Henderson v. State,* 906 S.W.2d 589, 597 (Tex.App.—El Paso 1995, pet. ref'd); *Richardson v. State,* 860 S.W.2d 214, 216 (Tex. App.—Fort Worth 1993, no pet.); *see* Tex. Code Crim. Proc. Ann. 38.36(a); Act of April 17, 1991, 72nd Leg., R.S., ch. 48, § 1, 1991 Tex. Gen. Laws 474, 474–75, *repealed by* Act of May 8, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3614 (cite to former statute Tex. Pen.Code Ann. § 19.06).

On appeal, a trial judge's determination of relevance is reviewed by the appellate court to decide if the trial court abused its discretion. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (on rehearing). In the instant case, we find no abuse of discretion in the trial court's holding that the abuse evidence was not relevant to show the prior relationship between the parties. Tex.R.Crim. Evid. 401, 402. There was no evidence introduced at trial demonstrating that Buhl's and Evans' fights or confrontations had anything to do with the fact that Evans may have hit his son. Buhl testified that he and Evans began fighting after Evans cursed at Traci Buhl, and no witness stated that Evans' subsequent harassment of Buhl related in anyway to Evans' abuse of his son. Consequently, we conclude that the trial court did not abuse its discretion in holding that the abuse evidence was not relevant to the parties' relationship. Buhl's second point is overruled.

**B. Evidence that Buhl feared Evans**

In his third point of error, Buhl contends that the court erred in refusing to admit testimony that Buhl told Darren Law he was afraid of Evans because Evans often pulled guns on him. Although Buhl argued that this evidence was relevant to his state of mind, the trial court sustained the State's hearsay objection. *See* Tex.R.Crim. Evid. 803(3).

Under the rules of evidence, an out-of-court statement offered during trial to prove the truth of the matter asserted is inadmissible unless the statement falls within one of the exceptions to the hearsay rule. *See* Tex. R.Crim. Evid. 801(d), 802. The hearsay exception Buhl claims is applicable to his statements is found in Rule 803(3) of the Rules of Criminal Evidence which provides that statements expressing the declarant's then existing state of mind are admissible. Tex. R.Crim. Evid. 803(3); *McDonald v. State,* 911 S.W.2d 798, 806 (Tex.App.—San Antonio 1995, pet. dism'd).

In order to determine whether Buhl's statement falls within Rule 803(3)'s exception for statements about a declarant's then existing state of mind, we must examine other cases applying this exception. In *Pena v. State,* 864 S.W.2d 147, 149 (Tex.App.—Waco 1993, no pet.), we held that testimony showing the victim wanted to leave the defendant but felt economically trapped was offered to show the victim's state of mind and not to prove the truth of the victim's statements. Additionally, in *Williams v. State,* 927 S.W.2d 752, 764–65 (Tex.App.—El Paso 1996, pet. ref'd), the El Paso Court analyzed statements made by the victim regarding her fear that the defendant would hurt her or take her daughter if the defendant was informed that he could not return to the residence. The El Paso Court determined that these statements were not offered to prove the truth of the matter asserted, but simply to reveal the victim's state of mind. *Id.* at 764.

■ After comparing Buhl's out-of-court statements to the testimony in *Pena* and *Williams,* we believe a distinction can be drawn between those cases and the instant case. *Pena* and *Williams* would support Buhl's argument if defense counsel had simply wanted Darren Law to relate that Buhl said he was afraid of Evans, because his fear would appear to be a statement of then existing emotional condition. However, when defense counsel sought to have Law explain that Buhl's fear was caused by the numerous times Evans had pulled guns on him, the trial court was within its discretion to hold that this testimony was offered to prove the truth of a fact the declarant remembered or believed, *i.e.,* Evans had pulled guns on Buhl numerous times in the past. *See King,* 953 S.W.2d at 269 & n. 4 (applying an abuse of discretion standard to a trial court's determination of hearsay); *Coffin v. State,* 885 S.W.2d 140, 149 (Tex.Crim.App.1994).

In arguing that this statement was not offered to prove the truth of the matter asserted, Buhl has cited *Bell v. State* which explains that one test for hearsay is whether "the out-of-court statement is relevant only if the trier of fact believes that the statement was both truthful and accurate." 877 S.W.2d 21, 24 (Tex.App.—Dallas 1994, pet. ref'd). We believe *Bell's* expression of the hearsay test would also support the trial court's conclusion that Buhl's out-of-court statements do not fall within Rule 803(3). The relevance of Buhl's statement that he was afraid of Evans because Evans often pulled guns on him hinges upon the truthfulness of Buhl's assertion that Evans had in fact pulled guns on him numerous times in the past. *See id.* Consequently, we do not believe the trial court abused its discretion in sustaining the State's hearsay objection to Darren Law's testimony. Buhl's third point is overruled.

C. Provocation Instruction

By his fourth point, Buhl contends the trial court erred by including a provocation instruction in the court's charge which impermissibly limited his claim that he acted in self-defense when shooting McCutcheon. *See Stanley v. State,* 625 S.W.2d 320, 321 (Tex.Crim.App. [Panel Op.] 1981). The fol-lowing provocation instruction was given by the trial court:

So, in this case, if you find and believe from the evidence beyond a reasonable doubt that the defendant, Kevin Lee Buhl, immediately before the difficulty, then and there did some act with the intent on his, the defendant's, part to produce the occasion for killing the deceased, Dawood McCutcheon, and to bring on the difficulty with the said deceased Dawood McCutcheon, and that such conduct on defendant's part, if there were such, was reasonably calculated to, and did, provoke a difficulty, and that on such account the deceased Dawood McCutcheon attacked the defendant with deadly force, or reasonably appeared to defendant to so attack him or to be attempting to so attack him, and that the defendant then killed the said Dawood McCutcheon by the use of deadly force, to wit, by shooting him with a firearm, in pursuance of his original design, if you find there was such design, then you will find the defendant guilty of the murder of Dawood McCutcheon.

■ A trial court may properly give an instruction on provoking the difficulty when any evidence introduced at trial raises the issue of provocation. *Matthews v. State,* 708 S.W.2d 835, 838 (Tex.Crim.App.1986); *Lee v. State,* 903 S.W.2d 845, 848 (Tex.App.—Beaumont 1995, pet. ref'd). Then, after receiving their instructions from the court, the jurors must decide whether the defendant acted in self-defense or if he intentionally provoked the deceased. *Norwood v. State,* 135 Tex.Crim. 406, 120 S.W.2d 806, 809 (1938); *Halbert v. State,* 881 S.W.2d 121, 126 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd) (stating that provocation is usually a question of fact for the jury). A provocation instruction is warranted when the evidence suggests that: (1) the defendant's actions or words were intended cause the difficulty in order to have a pretext for shooting the deceased, (2) as a result of the provocation the deceased made the first attack, and (3) self-defense is an issue. *Matthews,* 708 S.W.2d at 837–38.

■ In the instant case, while the evidence of provocation is not particularly

strong, it is nevertheless sufficient to raise this issue such that the trial court did not err in including a provocation instruction in the jury charge. The jurors could have concluded from the evidence that Buhl acted with the intent to provoke McCutcheon when, after running up to the car and shooting Evans six times, he failed to retreat but made eye contact with McCutcheon who was sitting in the backseat. Buhl explained that, after making eye contact with McCutcheon, McCutcheon then began reaching with one hand to grab something on the floor of the car. The jurors could also consider that Buhl may have wanted to provoke McCutcheon in order to kill him because McCutcheon had been with Evans when Evans harassed him by chasing his car.

Next, Buhl claimed that McCutcheon appeared to be about to attack him when he fired his weapon at McCutcheon. Also, one of the defense witnesses, Roderick Watson, stated that, after Buhl shot Evans, Buhl ceased shooting, but then gunshots were fired from inside the vehicle which caused Buhl to begin shooting into the back seat of the car. From Watson's account of the shooting, the jurors could have believed McCutcheon did actually make the first attack on Buhl. Additionally, we believe that, based on Buhl's account of the shooting, self-defense is clearly at issue. Buhl's fourth point of error is therefore overruled because the trial court did not err in giving the jury a provocation instruction.

## D.  *Batson* Challenge

Following voir dire, the State used peremptory strikes against three of the four black jurors on the panel. In response to

Buhl's *Batson*[2] objection, the State offered race-neutral explanations for each of the three strikes.[3] The trial court then overruled Buhl's *Batson* objection, concluding that Buhl had not proved the State's peremptory strikes were the result of "purposeful racial discrimination." *Purkett v. Elem,* 514 U.S. 765, 766–69, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995).

On appeal a trial court's ruling on a *Batson* objection will not be reversed unless clearly erroneous. *See Stiles v. State,* 927 S.W.2d 723, 727 (Tex.App.—Waco 1996, no pet.); *see also Mayr v. Lott,* 943 S.W.2d 553, 556 (Tex.App.—Waco 1997, no writ). Buhl argues that the State's peremptory strikes must have been racially motivated because the State failed to strike other members of the venire who shared similar characteristics with the black persons struck by the State. Specifically, Buhl points out that other venire members had relatives with criminal convictions, but these individuals were not struck like the black venire members Goff and Owens.

After viewing the evidence from the *Batson* hearing in the light most favorable to the trial court's ruling, we conclude that the trial court's decision to overrule Buhl's *Batson* objection was not clearly erroneous. *See Stiles,* 927 S.W.2d at 727. Despite Buhl's assertion that race was the only distinguishing factor among the jurors struck versus those left on the panel, we believe the prosecutor's race-neutral explanations support the trial court's ruling. The State's dismissal of Owens, which Buhl contends is the most questionable strike, is supported by the State's reasoning that the father of Owens' children was currently charged with cap-

**2.**  *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**3.**  The race-neutral reasons given by the State for the strikes were:

 • Owens was struck because the father of her children was currently charged with capital murder and because Owens had a disorderly conduct conviction.

 • Jones was struck because he knew Buhl's sister, and he stated that because of this relationship sitting on the jury would cause problems for him. The State also mentioned that Jones had three friends who had been killed by firearms.

 • The State explained that Goff was struck because the assistant district attorney representing the State personally prosecuted her husband for attempted murder and because Goff had been a witness in the case. However, the prosecutor later corrected his testimony and informed the court that Goff's husband had actually been prosecuted for several burglaries, not attempted murder. Also, the prosecutor said that after checking his records he discovered Goff had not been a witness in the case, but he had confused her with another witness.

ital murder just like Kevin Buhl. None of the venire members who were not struck had relatives charged with or convicted of capital murder. Also, Goff's husband had been personally prosecuted by the State's attorney for several burglaries. There was no evidence any of the other venire members had family members personally prosecuted by the attorney representing the State. The State's strike of Jones was justified because Jones worked with Buhl's sister and said being on the jury would cause a problem for him. Buhl's fifth point is overruled.

## E. Constitutional Challenges

In his sixth point of error, Buhl asserts that, when the defendant has a legitimate voluntary manslaughter defense, the imposition of an automatic life sentence without providing an opportunity for the defendant to present evidence suggesting he was acting under the influence of sudden passion constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution. *See* U.S. CONST. amend. VIII, XIV. Similarly, Buhl's seventh point of error claims that a defendant's right to due process is violated when an automatic life sentence is imposed after a defendant is found guilty of capital murder because Texas' capital murder statute prevents a defendant from raising the issue of sudden passion. *See* U.S. CONST. amend. XIV.

Pursuant to section 19.02(d) of the Penal Code, if a defendant is convicted of the offense of murder, he may present evidence during the penalty phase of his trial showing that he acted "under the immediate influence of sudden passion arising from an adequate cause" in order to lessen the severity of the offense from a first degree felony to a felony of the second degree. *See* TEX. PEN.CODE ANN. § 19.02(d) (Vernon 1994). However, the legislature has determined that when a defendant is convicted of capital murder the defendant is subject to either the death penalty or a life sentence. *See* TEX. PEN.CODE ANN. § 12.31(a) (Vernon 1994). If the State chooses not to seek a sentence of death, there is no penalty phase of the trial during which the defendant may present evidence of sudden passion because the trial judge is authorized to automatically impose a life sentence on the defendant as punishment for committing capital murder. *Id.;* TEX.CODE CRIM. PROC. ANN. art. 37.071, § 1; *see Prater v. State,* 903 S.W.2d 57, 60 (Tex.App.—Fort Worth 1995, no pet.).

■ We do not agree with Buhl's contention that his right to due process was violated because he was unable to present evidence that he acted as a result of sudden passion. The Legislature of the State of Texas has the authority to set appropriate sentences for different offenses, and it has determined that the only available punishments for capital murder are life imprisonment or a death sentence. *See* TEX. PEN.CODE ANN. § 12.31(a); *Matchett v. State,* 941 S.W.2d 922, 932 (Tex.Crim.App.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997) (stating that the legislature has the power to define an offense and set the appropriate penalty); *Laird v. State,* 933 S.W.2d 707, 715 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd) ("The legislature may alter or abolish the procedure whereby the jury assesses punishment, within the bounds of due process...."); *Jones v. State,* 902 S.W.2d 102, 105–06 (Tex.App.—Houston [1st Dist] 1995, pet. ref'd). Therefore, when the State declines to seek a sentence of death, there is no need for a penalty phase during which the defendant may present evidence of sudden passion to mitigate his punishment because the defendant is receiving the minimum sentence available for his crime. *Prater,* 903 S.W.2d at 60. Thus, we agree with the other appellate courts which have held that a defendant's constitutional right to due process is not violated by Texas' capital murder sentencing procedure when the death penalty is waived. *See Laird,* 933 S.W.2d at 715; *Prater,* 903 S.W.2d at 60; *see generally Bridgewater v. State,* 905 S.W.2d 349, 355 (Tex.App.—Fort Worth 1995, no pet.); *Speer v. State,* 890 S.W.2d 87, 92–93 (Tex.App.—Houston [1st Dist.] 1994, pet. refused).

■ We are likewise convinced that a mandatory life sentence does not constitute a "cruel and unusual" punishment within the meaning of the Eighth Amendment. U.S. CONST. amend. VIII. This conclusion is sup-

ported by the United States Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). In *Harmelin* the Court held that a mandatory life sentence imposed on a defendant for possessing 672 grams of cocaine did not violate the Eighth Amendment. *Id.* at 501 U.S. at 961, 111 S.Ct. at 2684. The Court stated that a sentence does not become cruel or unusual just because it is mandatory. *Id.* at 501 U.S. at 995, 111 S.Ct. at 2701–02. Thus, the Court re-affirmed that the Constitution does not require individualized sentencing for the jury to consider mitigating evidence when the death penalty is not at issue. *Id.* Furthermore, other Texas appellate courts have agreed with our decision that the imposition of an automatic life sentence on a capital murder defendant is not cruel and unusual punishment. *See Laird*, 933 S.W.2d at 714; *Prater*, 903 S.W.2d at 60; *see generally Bridgewater*, 905 S.W.2d at 355; *Speer*, 890 S.W.2d at 92–93. Buhl's sixth and seventh points of error are overruled.

The judgment of the trial court is affirmed.