Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-05-00834-CR

Robert Walter **FISCHER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2004-CR-0216
Honorable Sid L. Harle, Judge Presiding

Opinion by:     Rebecca Simmons, Justice

Sitting:        Sandee Bryan Marion, Justice
                Phylis J. Speedlin, Justice
                Rebecca Simmons, Justice

Delivered and Filed:   June 10, 2009

AFFIRMED

This case is on remand from the Court of Criminal Appeals.  Appellant Robert Walter
Fischer appeals his conviction for murder.  In light of the standards set forth by the Court of
Criminal Appeals, we affirm the judgment of the trial court.

## PROCEDURAL HISTORY

A jury found Fischer guilty of murdering Edith Camp and sentenced Fischer to ninety-
nine years confinement in the Institutional Division of the Texas Department of Criminal Justice.

On appeal, Fischer argued that the evidence was factually insufficient and that the trial judge erred in admitting extraneous offense evidence regarding the theft of a firearm and admitting improper hearsay evidence. This court reversed the judgment of the trial court holding that the trial court erred in admitting the evidence regarding the theft of the firearm based on the proffer presented to the trial court. *Fischer v. State*, 235 S.W.3d 470 (Tex. App.—San Antonio 2007), *rev'd*, 268 S.W.3d 553 (Tex. Crim. App. 2008). The State petitioned the Court of Criminal Appeals for discretionary review. The Court of Criminal Appeals reversed the judgment of this court and remanded the matter for this court to consider Fischer's remaining issues: (1) insufficiency of the evidence, and (2) the erroneous admission of hearsay evidence. *Fischer v. State*, 268 S.W.3d 552, 558 (Tex. Crim. App. 2008).

### FACTUAL BACKGROUND

On May 26, 2003, sixty-nine-year-old Edith Camp was in her home when she was killed by a gunshot to the back of her head. Cash and valuables were taken from the home. Ballistics tests showed a distinctive firing pattern consistent with that of a .22 caliber Cricket Keystone rifle. Neither the murder weapon nor items taken from the residence were recovered.

The State's case was based entirely on circumstantial evidence. Several months before the murder, Mrs. Camp was apparently upset with Fischer, her nephew, and told a friend that she intended to cut Fischer off of any further financial support. A few days prior to the murder, Mrs. Camp stated that Fischer gave her "the creeps." Two weeks after the murder, a .22 caliber Cricket rifle was discovered missing from the Boerne Wal-Mart where Fischer was a support manager. Ed Love, Jr., a firearms examiner with the Bexar County Crime Lab, subjected a Cricket rifle, with the serial number immediately following that of the stolen firearm, to ballistics tests. Love testified that the slug recovered from the scene of the murder was fired from a

Cricket rifle identical or very nearly identical to the rifle taken from Wal-Mart. In an attempt to link Fischer to the murder, the State presented evidence suggesting that Fischer stole the .22 Cricket rifle from the Boerne Wal-Mart as part of his plan to murder Mrs. Camp.

## ADMISSION OF EXTRANEOUS OFFENSE EVIDENCE

Fischer argued on appeal that the trial court erred in admitting the evidence relating to the theft of the Cricket rifle from Wal-Mart. The State made an oral proffer to the trial court of the extraneous theft evidence it intended to introduce. Fischer objected to the admission of the extraneous offense on the grounds of relevance, that its probative value was outweighed by its danger of unfair prejudice, and that the evidence was insufficient to support its admission as an extraneous offense. The trial court overruled Fischer's objections, and testimony regarding the theft was admitted during the guilt-innocence phase of trial. We held, based on the insufficiency of the proffer, the trial court erred in admitting evidence of the theft of the Cricket rifle as an extraneous offense in support of the murder. The Court of Criminal Appeals agreed that the proffer was insufficient but held that the trial court did not err in admitting evidence regarding the theft of the Cricket rifle during the trial and remanded the case to address Fischer's remaining issues on appeal.

## HEARSAY EVIDENCE

We first address Fischer's argument that the trial court erred in admitting hearsay evidence of the decedent. Under the rules of evidence, an out-of-court statement offered during trial to prove the truth of the matter asserted is inadmissible unless the statement falls within one of the exceptions to the hearsay rule. *See* TEX. R. EVID. 801(d), 802. In accordance with Rule 803(3), the State offered two statements made by Pamela Fenn, a friend of Mrs. Camp's. According to Mrs. Fenn, Mrs. Camp relayed that she intended to stop the financial support that

she was providing Fischer and that Fischer gave her "the creeps." Fischer alleges the statements were inadmissible hearsay and the trial court erred in allowing the statements before the jury. We review the erroneous admission of hearsay evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). The Rules of Evidence, however, require relevancy and probative value be proven before either of the above exceptions apply. TEX. R. EVID. 401, 403; *see also Smith v. State*, 5 S.W.3d 673, 679 (Tex. Crim. App. 1999); *Harwood v. State*, 961 S.W.2d 531, 539 (Tex. App.—San Antonio 1997, no pet.). We address each statement individually.

## A. Fischer Gives Her "the Creeps"

Mrs. Fenn testified that on May 23, 2003, three days before the murder, Mrs. Camp related that Fischer gave her "the creeps." Under Rule 803, the statement was admissible as an emotional response to a particular person and to demonstrate the defendant's relationship with the victim.[1] TEX. R. EVID. 803; TEX. CODE CRIM. PROC. ANN. art. 38.36(a) (Vernon 2005); *Martinez v. State*, 17 S.W.3d 677, 688 (Tex. Crim. App. 2000); *Cardenas v. State*, 115 S.W.3d 54, 63 (Tex. App.—San Antonio 2003, no pet.). A witness may testify that a person was afraid of another person as a mental or emotional condition of the victim. *Buhl v. State*, 960 S.W.2d 927, 932 (Tex. App.—Waco 1998, pet. ref'd); *see also Williams v. State*, 927 S.W.2d 752, 764-65 (Tex. App.—El Paso 1996, pet. ref'd) (determining the victim's statement that she feared the defendant would hurt her was the victim's state of mind and was not offered to prove the truth of the matter asserted). Rule 803(3) does not, however, allow hearsay evidence regarding facts as to why the person was afraid. *Buhl*, 960 S.W.2d at 933 (distinguishing between statements showing mental or emotional condition of fear, and such statements being offered to prove the

---

[1] Rule 803(3) provides an exception to the hearsay rule for a "statement of the declarant's then existing state of mind . . . (such as intent, plan, motive, design, mental feeling, pain, or bodily health)" TEX. R. EVID. 803(3).

truth that the victim had actually pulled guns on the defendant). Here, Mrs. Camp's statement is limited to the fact that she felt "creeped out" by Fischer without further explanation. *See Dorsey v. State*, 24 S.W.3d 921, 929-30 (Tex. App.—Beaumont 2000, no pet.) (disallowing victim's statements that reflected a belief that defendant was going to kill her, but allowing statements that she was afraid of defendant). Because the statement was permissible hearsay, and went to the nature of the relationship between the victim and defendant, the court did not err in admitting this statement.

## B. Cessation of Financial Support

### 1. Statement in Question

Mrs. Fenn also testified that Mrs. Camp planned to deny future support or aid to Fischer. The statement showed Mrs. Camp's plan or intent, and thus fell squarely within Rule 803. TEX. R. EVID. 803(3); *Dorsey*, 24 S.W.3d at 928 (allowing declarant's statement which demonstrated a future intent to leave defendant). The implication before the jury was that the withdrawal of funds gave rise to Fischer's motive for murder. Standing alone, the evidence of Mrs. Camp's intent to stop helping Fischer was not probative of Fischer's motive because there is no evidence that Mrs. Camp actually stopped providing money or that Fischer was even aware of her plan. Without evidence that Fischer knew of Mrs. Camp's intentions, this statement cannot substantiate motive and, thus, lacks both relevancy and probative value. TEX. R. EVID. 401, 403 (requiring evidence have relevancy and probative value); *Eby v. State*, 165 S.W.3d 723, 737 (Tex. App.—San Antonio 2005, pet. ref'd) (stating that such "evidence is admissible only if accompanied by proof showing that, at the time of the murder, the accused had knowledge of the facts constituting the motive"). Because the court erred in admitting the statement, we must determine whether the error was harmless. *See* TEX. R. APP. P. 44.2(b).

*2. Harmless Error Analysis*

Here, the erroneous admission was a non-constitutional error. *See id.* Thus, under Rule 44.2(b), we disregard the error if no substantial right has been affected. *Id.* "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). "[A]n appellate court may not reverse [a conviction] for non-constitutional error if the court, after examining the record as a whole, has fair assurance that the error did not have a substantial *and* injurious effect or influence in determining the jury's verdict." *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004) (citations omitted); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (instructing appellate courts to examine the record as a whole in determining whether the error affected a substantial right). In addition to the testimony of the termination of financial support, the State provided evidence of the stolen Cricket rifle as the murder weapon, Mrs. Camp's negative feelings toward her nephew, Fischer's inconsistent alibi, and the perpetrator's knowledge of where valuables were located in the victim's home. We, therefore, find the error harmless under Rule 44.2(b). *See* TEX. R. APP. P. 44.2(b).

## FACTUAL SUFFICIENCY

Fischer next contends that the evidence presented at trial was factually insufficient to support the charged offense of murder.

## A. Standard of Review

In conducting a factual sufficiency review, this court views all of the evidence in a neutral light and sets aside the verdict only if: (1) the evidence is so weak as to make the verdict "clearly wrong and manifestly unjust," or (2) the verdict is "against the great weight and

preponderance of the evidence." *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (internal quotation marks omitted); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (en banc). "[D]ue deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence," and a reviewing court's disagreement "with the fact finder's determination is appropriate only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Johnson*, 23 S.W.3d at 9. Additionally, "we consider all the evidence admitted, [regardless of] whether [the admission was] proper or improper." *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).

## B. Murder

To convict Fischer of murder, the State was required to show, beyond a reasonable doubt, that Fischer intentionally or knowingly caused the death of Mrs. Camp, or intended to cause her serious bodily injury and "commit[ed] an act clearly dangerous to human life that caused [her] death." *See* TEX. PENAL CODE ANN. § 19.02(b)(1)-(2) (Vernon 2003). If the evidence is sufficient, the State may prove its case through circumstantial evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. 2000) (upholding a verdict where the circumstantial evidence placed the defendant at the crime, linked his shoes to the victim's injuries, showed his consciousness of guilt, and supplied a motive). The State's case rested almost exclusively on the ballistics evidence and Fischer's alleged theft of the Cricket rifle. In assessing the evidence to support Fischer's theft of the firearm, the Court of Criminal Appeals concluded:

> the evidence that the State presented at trial beyond the proffer is sufficient to support a finding beyond a reasonable doubt that appellant committed [the theft of the firearm]. It would be very difficult to conclude otherwise in this particular case, because the State necessarily proved beyond a reasonable doubt that appellant was the one who stole the rifle from the Wal-Mart when it also proved beyond a reasonable doubt that appellant used this weapon to murder the victim.

*Fischer*, 268 S.W.3d at 556. Additionally, the State's evidence included that: (1) Fischer previously borrowed or received money from Mrs. Camp; (2) Fischer appeared nervous at his interviews with police and the Texas Rangers; (3) Mrs. Camp harbored negative feelings toward Fischer; (4) Fischer gave Mrs. Camp "the creeps"; (5) Mrs. Camp planned to cease financial support of Fischer; (6) Fischer's alibi was inconsistent; and (7) Fischer married his alibi witness between her testimony at the grand jury and the trial, which the State implied was an attempt to invoke a spousal testimonial privilege.

The State also introduced evidence, via Cingular Wireless records between Fischer and his girlfriend, Jeannie Puhrmann, that Fischer was in the general vicinity of the crime scene during the time period in question. Fischer first told police that he was with Puhrmann all night, but later admitted that he made a brief trip to the Boerne Wal-Mart. Although the cellular phone records indicate that Fischer traveled near Mrs. Camp's residence that night, the location was limited to a sector of land within a two to fifteen mile radius of the user.

In Fischer's defense, both his father and Puhrmann testified that Fischer returned home wearing the same clothes he wore earlier that evening, and that there did not appear to be any blood on them. Puhrmann also testified Fischer's demeanor during their calls that evening was normal and that he did not appear upset. Moreover, the police never searched either Fischer's or Puhrmann's homes for evidence of the murder or the theft of the Cricket rifle.

The evidence establishes beyond a reasonable doubt the necessary link between Fischer and the theft of the firearm, and that the missing Cricket rifle was actually the weapon used. *Fischer*, 235 S.W.3d at 557. After viewing all the evidence in a neutral light, we cannot say that the evidence is so weak as to make the verdict "clearly wrong and manifestly unjust," or that the

verdict is "against the great weight and preponderance of the evidence." *See* Watson, 204 S.W.3d at 414-15. We, therefore, overrule this issue on appeal.

## CONCLUSION

Mrs. Camp's statement that Fischer gave her "the creeps" was permissible hearsay because it went to the relationship between Fischer and Mrs. Camp. Additionally, although the trial court erred in admitting Mrs. Camp's statement regarding her plans to withhold all financial support, we cannot say that the error had a substantial and injurious effect on the jury's verdict. The error was, therefore, harmless. Finally, reviewing the evidence presented by the State, we cannot say that the evidence was so weak as to make the verdict "clearly wrong and manifestly unjust," or that the verdict is "against the great weight and preponderance of the evidence." Accordingly, we affirm the judgment of the trial court.

Rebecca Simmons, Justice

DO NOT PUBLISH