Affirmed and Memorandum Opinion filed August 24, 2004









Affirmed and Memorandum Opinion filed August 24, 2004.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-01086-CR

____________

 

ARNOLD LOUIS DAVIS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 182nd
District Court

Harris County, Texas

Trial Court Cause No. 871,605

 



 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Arnold Louis
Davis, of aggravated assault on a public servant and sentenced him to ten years= probation  and a $10,000 fine.  In four points of error, appellant claims (1)
the evidence is legally and factually insufficient to support his conviction;
(2) the trial court erred by denying appellant=s requested
instruction on the duties of an off-duty police officer; and (3) the trial
court erred in overruling appellant=s objection to the
prosecutor=s closing argument because it constituted
an impermissible comment on appellant=s post-arrest
silence. We affirm.  

 








Background

Officer Donald Sealy, a police officer
with the Houston Police Department (AHPD@) Mounted Patrol,
testified that he was driving his marked patrol car when he looked in his rear
view mirror and saw appellant, the passenger in the car behind him, obviously
mouthing profane words and gesturing at the officer with his middle finger. Officer
Sealy initially ignored appellant and continued driving.  Sealy changed lanes but noticed that the car
kept pace with him, even when he slowed down, and appellant continued to mouth
words and make obscene hand gestures. 
When Sealy next stopped, the car pulled up to the left side of the
patrol car.  Appellant lowered his
window, leaned out of the car, and began yelling obscene words at Officer
Sealy.  Sealy asked appellant what his
problem was, but appellant continued to utter profanities.  When the light turned green, Officer Sealy
decided to pull the car over because of appellant=s irrational
behavior. 

Before he could radio HPD dispatch, Sealy
said appellant came towards the patrol car in a hurried motion and Sealy met
appellant between the two vehicles. 
Sealy again asked appellant what the problem was.  Appellant began angrily cussing at the
officer about his driving.  Appellant
said he was going to call a sergeant. 
Appellant=s wife, Denise Davis, also got out of the
car and appeared to make a call on a cell phone.  Sealy told appellant that, if he wanted to
talk with his supervisor, they could go to a nearby police station.  Because his attempts to calm appellant down
were not working, Sealy said he decided to call a supervisor.  As Sealy was getting into his patrol car, he
heard appellant say, A[y]ou=re not going
anywhere, you mother [expletive].@  Officer Sealy looked up, and appellant was
pointing a .38 caliber revolver at the officer=s chest.  Sealy knew the gun was loaded because he saw
hollow point bullets through the barrel of the gun.  When Officer Sealy moved to get out of the
patrol car, appellant said, A[y]ou=re not going
anywhere, you son of a [expletive].@  Sealy pushed the car door, ran down the
driver=s side of the car,
went around to his trunk, pulled his service revolver, and ordered appellant to
put down his weapon multiple times. 
Sealy then called for help on his hand-held radio.  








HPD Sergeant Bernard Simien happened to
drive by and noticed the stopped patrol car. 
He saw Officer Sealy exit his patrol car and speak to appellant and his
wife; it appeared as if an argument erupted. 
Sergeant Simien saw Sealy walk back to the patrol car and sit down but
keep one foot outside of the patrol car. 
Simien then saw Officer Sealy stand directly in front of appellant with
both hands in the air and saw Sealy push appellant with the door of the patrol
car and run.  Simien saw a gun in
appellant=s hand. 
Simien ran across the median, pulled his weapon, announced his presence,
and advised appellant to put his weapon down. 
After Simien twice said he was with HPD, appellant=s wife walked
towards the sergeant and said she was an HPD officer.  She told him something to the effect that
Officer Sealy had cut her off in traffic and that her husband was the
individual pointing a gun at the officer. 
Appellant told Simien that he wanted to speak to a sergeant.  Simien told appellant that he was a sergeant
and instructed appellant to put the weapon down.  Appellant told the sergeant he was a peace
officer and displayed a badge before putting his gun away. 

Appellant and his wife testified at trial
and disputed much of Officer Sealy=s testimony.  They said they witnessed Officer Sealy
abruptly pull in front of a car, causing the driver of the car to slam on the
brakes to avoid a collision.  They
decided to get descriptive information about the officer so appellant could
write a complaint letter.  At the light,
Officer Sealy looked at them sternly and later drove up to their car with his
window open and arms flailing.  When
appellant rolled his window down, it was Sealy who began cursing and it was
only then that appellant directed profanities at the officer. 








According to appellant=s testimony,
Officer Sealy was out of control and yelling profanities when he got out of his
patrol car.  Appellant and his wife said
they told Sealy they were peace officers and Denise showed him her badge or
identification.  Appellant said Sealy
admitted that he had no reason to stop them and told them that if they wanted
to talk with a sergeant they could follow him to the HPD Mounted Patrol
Headquarters.  Appellant told Officer
Sealy that he was not free to leave because he was being detained.  Appellant claims he did not pull his gun on
Officer Sealy until the officer would not follow orders to stay where he was.  Although he did pull his revolver, appellant
insists that he kept it in a high-ready position (pointed in the air with no
finger on the trigger) until Sealy pulled his service revolver.  During the exchange, Denise contacted HPD.

Two people who witnessed part of the
encounter testified at the trial.  One saw
appellant point a gun at Officer Sealy. 
She did not hear appellant say anything to the officer at this time, but
heard the officer tell appellant to put down his weapon.  She said that Sealy seemed calm. The other
witness saw the officer and appellant engaged in a heated discussion.  He observed the officer walk to his patrol
car and sit inside it, keeping one leg outside of the door, but did not see
weapons being drawn.  He said he was
concerned because appellant was being very abrupt and aggressive. This witness
said appellant=s wife did not appear to be engaged in a
very calm discussion with the officer either. 
In fact, he said it appeared as if she threw a tantrum at the officer=s patrol car
window.

Sufficiency of
the Evidence

In his first and second points of error,
appellant contends the evidence is legally and factually insufficient to
support his conviction of aggravated assault on a public servant.  Appellant raises two separate challenges to
his conviction.  First, appellant
challenges the jury=s finding of guilt because he claims the
State did not prove an essential element of the charged offense, namely that
Officer Sealy was lawfully discharging an official duty at the time of the
alleged assault.  Second, appellant
challenges the jury=s rejection of his defensive theory of
justification.  Because they involve
slightly different standards of review, we will consider the two challenges
separately.

Finding of Guilt








In evaluating a legal-sufficiency claim
attacking a jury=s finding of guilt, we view the evidence
in the light most favorable to the verdict. 
Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App.
2000).  We do not ask whether we believe
the evidence at trial established guilt beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318B19 (1979).  Rather, we determine only whether a rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Cardenas v. State,
30 S.W.3d 384, 389 (Tex. Crim. App. 2000). 
In our review, we accord great deference A>to the
responsibility of the trier of fact [to fairly] resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.=@  Clewis v. State, 922 S.W.2d 126, 133
(Tex. Crim. App. 1996) (quoting Jackson, 443 U.S. at 319).  We presume that any conflicting inferences
from the evidence were resolved by the jury in favor of the prosecution, and we
defer to that resolution.  Id.  

In conducting a factual-sufficiency review
of the jury=s determination, we do not view the
evidence Ain the light most favorable to the
prosecution.@  Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Instead, we view the evidence in a neutral
light and inquire whether the jury was rationally justified in finding guilt
beyond a reasonable doubt.  Zuniga
v. State, No. 539-02, 2004 WL 840786, at *7, C S.W.3d BB , BB (Tex. Crim. App.
Apr. 21, 2004).  We may find the verdict is
factually insufficient in two ways.  Id.  First, when considered by itself, the
evidence supporting the verdict may be too weak to support the finding of guilt
beyond a reasonable doubt.  Id.  Second, after weighing the evidence
supporting the verdict, the contrary evidence may be strong enough that the
beyond-a-reasonable-doubt standard could not have been met.  Id. 
We must discuss the evidence appellant claims is most important in
allegedly undermining the jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  However, we must
employ appropriate deference so that we do not substitute our judgment for that
of the fact-finder.  Zuniga, 2004
WL 840786, at *4.  Our evaluation should
not intrude upon the fact-finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony.  Cain, 958 S.W.2d at 407.

A person commits second-degree felony
assault if he intentionally or knowingly threatens another with imminent bodily
injury by using or exhibiting a deadly weapon. 
Tex. Pen. Code Ann. ' 22.01(a)(2) &
1.07(a)(17)(A) (Vernon 2003).  The
offense is enhanced to a first-degree felony if the assault is committed
against a person the actor knows is a public servant while the public servant
is lawfully discharging an official duty. 
Tex. Pen. Code Ann. ' 22.01(b)(2).  








Here, appellant makes two attacks on the
verdict.  First, he argues that, because
Officer Sealy did not have reasonable suspicion to stop the car, he was
committing official oppression and could not have been lawfully discharging an
official duty at the time of the incident. 
Second, he contends that, because Officer Sealy was leaving the scene
when he pulled his weapon, Sealy had already discharged his official duty.  We disagree.

Officer Sealy said he did not pull over
the car merely because appellant yelled profanities at him.  Sealy said he became increasingly suspicious
when the car started to pace his patrol car and mimic his actions.  The officer found the behavior irrational and
feared there might be a problem in the car. 
Regardless, the standard to determine whether Officer Sealy was lawfully
discharging an official duty is not whether he had reasonable suspicion to stop
the car, but whether he was acting in his capacity as a peace officer during
the incident.  Montoya v. State, 744
S.W.2d 15, 29B30 (Tex. Crim. App. 1987) (finding that
whether an officer=s stop of an individual was
constitutionally reasonable Ais not relevant to
determining if [the officer] was acting in the lawful discharge of his duties@).  In Hughes v. State, the Court of
Criminal Appeals rejected a claim that an officer is not engaged in the lawful
discharge of an official duty if he is engaged in an unconstitutional stop or
detention.  897 S.W.2d 285, 297B98 (Tex. Crim.
App. 1994).  The court found that,
because the officer was on duty, in uniform, and responding to the dispatcher=s call, he was
acting in his official capacity at the time of the stop.  Id. at 298.  In this case, there is no dispute that
Officer Sealy was on-duty and in uniform when he stopped appellant.  Thus, we find appellant=s challenge to the
reasonableness of the stop irrelevant to the jury=s determination.








Appellant also claims that Officer Sealy
discharged, by attempting to leave the scene, any official duty he might have
been engaged in at the time of the incident. 
Here, the testimony is in conflict. 
Appellant and his wife said Sealy told them that he was leaving the
scene and that, if they wanted to talk to a sergeant, they could follow him to
Mounted Patrol Headquarters.  Sealy
testified he was headed back to his patrol car to radio for assistance, not to
leave the scene.  Eyewitnesses saw the officer
sitting in his car but with one leg outside of the car.  The weight to be given conflicting testimony
lies within the sole province of the jury, and we, as a reviewing court, must
show deference to the jury=s
determination.  See Cain, 958
S.W.2d at 408B09. 
Moreover, even assuming Officer Sealy was attempting to leave the scene
as appellant suggests, he was still on duty and in uniform. That he may have
been attempting to end his encounter with appellant is not determinative of
whether he was lawfully discharging an official duty.

Viewing the evidence in a light most
favorable to the verdict, we conclude a reasonable trier of fact could have
found beyond a reasonable doubt that appellant was guilty of aggravated assault
on a public servant.  Viewing the same
evidence in a neutral light, we conclude the jury was also rationally justified
in finding guilt beyond a reasonable doubt. 
The evidence is therefore legally and factually sufficient to support
the verdict. 

Rejection of Defensive Theory of
Justification

Appellant also contests the jury=s rejection of his
justification defense.  In evaluating the
legal-sufficiency portion of this challenge, we view the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact
could have found against appellant on the defensive issue beyond a reasonable
doubt.  Zuliani, 97 S.W.3d at
595.  In conducting the
factual-sufficiency review, we view all the evidence in a neutral light and
determine whether (1) the evidence supporting the rejection of the defense,
when considered by itself, is too weak to support the rejection beyond a
reasonable doubt or (2) contrary evidence, if present, is strong enough that
the beyond‑a‑reasonable‑doubt standard could not be met.  Roy v. State, Nos. 14-02-00909-CR
& 14-02-00910-CR, 2004 WL 1607489, at *4, C S.W.3d C, C (Tex. App.CHouston [14th
Dist.] July 20, 2004, no pet. h.) (modifying the standard of review, in light
of Zuniga, to evaluate a jury=s rejection of a
defense). 

The trial court gave the jury an
instruction on the defensive theory of justification.  A peace officer, such as appellant, is
justified in using force against another

when and to the degree necessary to
make or assist in preventing escape after arrest, if:








(1) the actor
reasonably believes the arrest or search is lawful; and 

(2) before using force, the actor manifests his
purpose to arrest or search and identifies himself as a peace officer, unless
he reasonably believes his purpose and identity are already known by or cannot
reasonably be made known to the person to be arrested.

Tex. Pen. Code Ann. ' 9.51(a) (Vernon
2003).  Here, appellant contends Officer
Sealy did not have the authority to stop appellant because stopping a vehicle
without reasonable suspicion constitutes official oppression.  Thus, appellant argues he was justified in
attempting to arrest Officer Sealy and in pulling his weapon because Sealy was
attempting to leave the scene.  Appellant
and his wife testified that they both told Officer Sealy they were peace
officers and that Denise showed Officer Sealy her badge.   Officer Sealy said neither appellant nor
Denise identified themselves as peace officers and he went back to his patrol
car to call for assistance rather than to leave the scene.  Further, although he recalled telling Officer
Sealy he was being detained, appellant admitted he did not inform Sealy he was
under arrest or explain to Sealy why he was being detained. 

Although the
previously-detailed accounts of Officer Sealy and appellant and his wife differ
regarding what transpired before, during, and after the stop, the jury was the
sole judge of all witness testimony.  See
Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).  Accordingly, the jury could choose to accept
the testimony of the Officer Sealy and disbelieve appellant=s and Denise=s testimony.  Given the testimonial evidence, the jury
could have determined (1) appellant was not reasonable in his belief that he
could lawfully arrest Officer Sealy; (2) appellant did not properly manifest
his intent to arrest Officer Sealy; or (3) appellant failed to identify himself
as a peace officer. 








By its verdict,
the jury found appellant was not justified in using force against Officer
Sealy.  Viewing the evidence in the light
most favorable to the verdict, we conclude a rational trier of fact could have
found against appellant on the defensive issue beyond a reasonable doubt.  Viewing the same evidence in a neutral light,
we hold that the evidence, when considered by itself, is not too weak to
support the implicit rejection of the defense and that the contrary evidence is
not so strong that the beyond-a-reasonable-doubt standard could not have been
met.  The evidence is therefore legally
and factually sufficient to support the jury=s rejection of
appellant=s justification defense.  We overrule appellant=s first and second
points of error.

Jury Instruction

In his third point
of error, appellant argues the trial court erred by denying an instruction on
the duties and powers of an off-duty peace officer.  The proffered instruction read:

You are instructed that an off-duty peace officer
who observes the commission of a crime possesses the same duties and powers as
a police officer who is on-duty.

Under our law, it is the duty of every peace
officer, whether on-duty or off-duty, to interfere without warrant to prevent
or suppress crime, and to arrest offenders without warrant in every case where
the officer is authorized by law.

 

It is well settled
that an accused has the right to an instruction on any defensive issue raised
by the evidence, whether that evidence is weak or strong, unimpeached or
contradicted, and regardless of what the trial court may or may not think about
the credibility of the evidence.  Granger
v. State, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); Ford v. State, 112
S.W.3d 788, 793 (Tex. App.CHouston [14th
Dist.] 2003, no pet.).  However, a
defendant is not entitled to an instruction that is merely repetitive of others
submitted by the court.  Peck v. State,
923 S.W.2d 839, 843 (Tex. App.CTyler 1996, no
pet.).  








In this case, the
trial court charged the jury on appellant=s justification
defense.  The instructions specifically
told the jury to acquit appellant if they found appellant was a peace officer
and reasonably believed the force he used was immediately necessary to make or
assist in making the arrest of Officer Sealy or to prevent or assist in
preventing the escape of Sealy after his arrest.  Along with the statutory language of the
defense, the trial court instructed the jury that Aany peace officer
may arrest, without warrant, any person who commits, in the presence or view of
such officer, any offense against the law.@  The jury instructions made it clear that the
justification defense had to be considered by the jury and did not
differentiate between an on-duty  or
off-duty peace officer.  The additional
instruction requested by appellant was merely duplicative of the trial court=s instruction that
any peace officer may arrest someone who commits an offense in the
officer=s presence.  Thus, appellant was not entitled to
submission of the instruction.  We
overrule his third point of error.

Comment on Post-Arrest Silence

In his fourth
point of error, appellant contends the trial court erred by overruling his
objection to a comment regarding his post-arrest silence.  Because such a comment cannot be viewed in
isolation, we will first review facts pertinent to the prosecutor=s statement.  In this case, Sergeant Simien, the officer
who happened upon the scene, made a sworn statement the day after the
incident.  Appellant testified that,
although his wife was asked to make a complete, sworn statement on the day of
the incident, she refused to do so.  She
offered only to give a Garrity statement (one that is not sworn to and
cannot be used in a criminal proceeding). 
Appellant said that, although he talked to the HPD Mounted Patrol
Officer Sergeant at the scene about what had happened, he was not given a fair
chance after leaving the scene to explain his side of the story.  He would have been willing to give a
statement, but no one attempted to talk with him or his attorney after the
parties left the scene and went to HPD headquarters.  

During closing
argument the following statements were made:








[Defense Counsel]:      Now,
let=s talk about Sergeant Simien.  And I want to say first he seemed like a real
nice fellow.  But he didn=t tell you the truth either . . .
.[He] swore [appellant] never showed . . . [a] badge.  Never told . . . [Simien] he was a cop . . .
. [but in the sworn statement Simien said] [t]he male stated that he was an
officer and also displayed a gold round badge in my direction . . . . It shows
you how officers get together, sit out in the conference room during a trial,
circle the wagons and get their stories straight.  

. . . 

[Prosecutor]:               The
defendant really made a lot about Sergeant Simien.  Sergeant Simien seemCI=m not going to say he=s a liar, but you know, they must
have been conniving or getting together because they=re trying to mislead you.  Simien said in his written statement that
after he=s had to threaten to kill someone
and put a gun on him, disarm him, he goes down. 
And in a statement he swears on that day what he did, the defendant, his
wife.  Didn=t swear on that day what happened,
but C

[Defense Counsel]:      I
object to that as a comment on the right to remain silent.

[Trial Court]:               That
will be overruled.  He=s speaking as to a third party.

 

Appellant claims
the prosecutor=s comment regarding who A[d]idn=t swear on that
day what happened@ was directed at him and criticized his
exercise of the right to remain silent. 
Thus, appellant contends the trial court=s ruling violated
his right to remain silent under the federal and state constitutions.  Because he has not made a distinction between
the rights he is afforded under the respective constitutions, we address
appellant=s point of error solely on the federal
constitutional grounds.  Jackson v.
State, 992 S.W.2d 469, 475 n.8 (Tex. Crim. App. 1999) (declining to address
appellant=s arguments regarding his state
constitutional rights when appellant had not made a distinction between the
federal Constitution and the Texas Constitution). 








The Fifth
Amendment to the United States Constitution guarantees an accused the right to
remain silent after arrest and prevents the prosecution from commenting on the
accused=s exercise of that
right.  Doyle v. Ohio, 426 U.S.
610, 618 (1976).  To violate an accused=s constitutional
rights, the prosecutor=s language, viewed from the jury=s perspective, Amust be manifestly
intended or of such a character that the jury would necessarily and naturally
take it@ as a comment on
the accused=s exercise of his right.  See Patrick v. State, 906 S.W.2d 481,
490B91 (Tex. Crim.
App. 1995).  Mere indirect or implied
allusions are not enough.  Id.  Furthermore, the prosecutor=s statement must
be viewed in the context of the entire record. 
See McGee v. State, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989).

Viewing the
comment in the context of the entire record, the prosecutor=s statement could
only have been referring to Simien because Simien was the focus of that part of
the prosecutor=s argument.  The prosecutor was clearly addressing the
attack on Sergeant Simien=s credibility by explaining that he gave a
sworn statement near the time of the incident about what he (Simien), the
defendant, and the defendant=s wife had done
that day.  The prosecutor said,
mistakenly, that Simien gave this sworn statement on the day of the
incident.  Appellant objected when the
prosecutor was apparently attempting to clarify that Simien A[d]idn=t swear on that
day what happened,@ but that he had given a sworn statement
just one day later.  We find the trial
court=s interpretation
comports with the evidence in the record and hold the comment was not of such a
character that the jury would necessarily and naturally take it as a comment on
appellant=s exercise of his Fifth Amendment
right.  We overrule appellant=s fourth point of
error.

 

Having overruled
all of appellant=s points of error, we affirm the trial
court=s judgment.

 

 

 

/s/      Leslie
Brock Yates

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 24, 2004.

Panel consists of
Justices Yates, Anderson, and Hudson.

Do Not Publish C Tex. R. App. P. 47.2(b).