ACCEPTED
12-15-00139-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
11/16/2015 11:54:57 AM
Pam Estes
CLERK

**NOS.  12-15-00139-CR
and  12-15-00140-CR**

**IN THE**

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

11/16/2015 11:54:57 AM

PAM ESTES
Clerk

**TWELFTH COURT OF APPEALS**

**SITTING AT TYLER, TEXAS**

_____

**RONNY LEE WILLIAMS,
Appellant,**

**v.**

**THE STATE OF TEXAS,
Appellee.**

_____

**Appealed from the 145TH District Court of
Nacogdoches County, Texas
Trial Court No. F1320424 and F1521685**

---

### *ANDERS* BRIEF

---

Noel D. Cooper
Texas Bar No. 00796397
LAW OFFICES OF NOEL D. COOPER
117 North St., Suite 2
Nacogdoches, Texas 75961
Telephone: (936) 564-9000
Telecopier: (936) 715-6022
noelcooper@noelcooper.com
ATTORNEY FOR APPELLANT,
RONNY LEE WILLIAMS

## NOS. 12-15-00139-CR
## and 12-15-00140-CR

## RONNY LEE WILLIAMS,
### Appellant,

### v.

## THE STATE OF TEXAS,
### Appellee.

## IDENTITY OF PARTIES & COUNSEL

Appellant certifies that the following is a complete list of the parties, attorneys, and any other person who has any interest in the outcome of this lawsuit:

Noel D. Cooper
Texas Bar No. 00796397
LAW OFFICES OF NOEL D. COOPER
117 North St., Suite 2
Nacogdoches, Texas 75961
Telephone: (936) 564-9000
Telecopier: (936) 715-6022
ATTORNEY FOR APPELLANT,
RONNY LEE WILLIAMS

Nicole LoStracco
State Bar No. 00792906
Nacogdoches County District Attorney
101 W. Main, Suite 250
Nacogdoches, Texas 75961
Telephone: (936) 560-7766
Fax: (936) 560-6036
Email:nlostracco@co.nacogdoches.tx.us
ATTORNEY FOR APPELLEE

RONNY LEE WILLIAMS
TDCJ-ID # 02001514
Stiles Unit
3060 FM 3514
Beaumont, TX 77705
APPELLANT

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL..............................................................2

TABLE OF CONTENTS......................................................................................4

INDEX OF AUTHORITIES.................................................................................5

STATEMENT OF THE CASE ..............................................................................9

ISSUES PRESENTED .......................................................................................10

STATEMENT OF FACTS...................................................................................10

SUMMARY OF THE ARGUMENT....................................................................20

ARGUMENT AND AUTHORITIES...................................................................21

    Standard for *Anders* Brief.......................................................................21

    Potential Issue 1: Was the evidence is legally sufficient to
           support Appellant's convictions?.......................... 25

    Potential Issue 2: Was Appellant's trial counsel ineffective in
           his representation of the Appellant?.....................30

CONCLUSION....................................................................................................40

PRAYER .............................................................................................................41

CERTIFICATE OF COMPLIANCE...................................................................42

CERTIFICATE OF SERVICE............................................................................43

# INDEX OF AUTHORITIES

## Case Law

*Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493
(1967) ...............................................................................20, 21, 40, 41

*Barnes v. State*, 876 S.W.2d 316
(Tex. Crim. App. 1994)........................................................... 27

*Brooks v. State*, 323 S.W.3d, 893
(Tex. Crim. App. 2010) ........................................................... 27

*Bryson v. State*, 820 S.W.2d 197
(Tex. App.—Corpus Christi 1991, no pet)........................................... 24

*Clewis v. State*, 922 S.W.2d 126
(Tex. Crim. App. 1996).................................................... 25, 28

*Conner v. State*, 67 S.W.3d 192
(Tex. Crim. App. 2001) ........................................................... 27

*Davis v. State*, 930 S.W.2d 765
(Tex. App.—Houston [1st Dist.], pet. ref'd.)................................. 25, 32

*Espinosa v. State*, 853 S.W.2d 36
(Tex. Crim. App. 1993)........................................................... 22

*Ex Parte Briggs*, 187 S.W.3d 458
(Tex. Crim. App. 2005) ........................................................... 33

*Ex Parte Gonzales*, 204 S.W.3d 391
(Tex. Crim. App. 2006)........................................................... 34

*Freeman v. State*, 167 S.W.3d 114
(Tex. App.—Waco 2005, no pet.)................................................... 34

*Gainous v. State*, 436 S.W.2d 137
(Tex. Crim. App. 1969)...............................................................41

*Gollihar v. State*, 46 S.W.3d 243
(Tex. Crim. App. 2001) ................................................................ 27

*Hernandez. v. State*, 726 S.W.2d 53
(Tex. Crim. App. 1986)................................................................31

*Hernandez v. State*, 988 S.W.2d 770
(Tex. Crim. App. 1999)................................................................30

*High v. State*, 573 S.W.2d 807
(Tex. Crim. App. 1978)............................................ 20, 33, 40, 41

*Ieppert v. State*, 908 S.W.2d 217
(Tex. Crim. App. 1995)............................................................... 22

*Jackson v. State*, 877 S.W.2d 768
(Tex. Crim. App. 1994).......................................................... 26, 32

*Jackson v. State*, 989 S.W.2d 842
(Tex. App.—Texarkana 1999, no pet.)........................................ 37

*Jackson v. Virginia*, 443 U.S. 307, 319
(1979) ........................................................................................ 26

*Johnson v. United States*, 360 F.2d 844
(D.C. Cir. 1966) .........................................................................40

*King v. State*, 29 S.W.3d 556
(Tex. Crim. App. 2000)............................................................... 26

*Krumboltz v. State*, 945 S.W.2d 176
(Tex. App.—San Antonio 1997, no pet.)....................................38

*Malik v. State*, 953 S.W.2d 234
(Tex. Crim. App. 1997)............................................................... 27

*McFarland v. State*, 928 S.W.2d 482
(Tex. Crim. App. 1996)...................................................... 25, 32, 33

*Mercado v. State*, 718 S.W.2d 291
(Tex. Crim. App. 2006)......................................................................... 36

*Milburn v. State*, 15 S.W.3d 267
(Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) ........................... 34

*Mitchell v. State*, 68 S.W.3d 640
(Tex. Crim. App. 2002)......................................................................... 39

*Peck v. State*, 923 S.W.2d 839
(Tex. App.—Tyler 1996, no pet.) ........................................................ 22

*Penagraph v. State*, 623 S.W.2d 341
(Tex. Crim. App. 1981) ........................................................................ 27

*Rivera v. State*, 123 S.W.3d 21
(Tex. App.—Houston [1st Dist] 2003, pet. ref'd) ............................... 34

*Robertson v. State*, 187 S.W.3d 475
(Tex. Crim. App. 2006)......................................................................... 33

*Sanchez v. State*, 222 S.W.3d 85
(Tex. Crim. App. 2006).........................................................................31

*Stone v. State*, 823 S.W.2d 375
(Tex. App.—Austin 1992, pet. ref'd, untimely)................................... 28

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984).................................................................25, 30, 31, 32, 39

*Thompson v. State*, 9 S.W.3d 808
(Tex. Crim. App. 1999)......................................................................... 33

*White v. State*, 671 S.W.2d 40
(Tex. Crim. App. 1984)......................................................................... 29

**Statutes**

TEX. HEALTH & SAFETY CODE
     § 481.102 ................................................................................ 29
     § 481.115 ................................................................................ 29

TEX. PENAL CODE
     § 22.01 ................................................................................... 29
     § 29.02 ................................................................................... 28
     § 29.03 ................................................................................... 28
     § 30.02 ................................................................................... 28

**RONNY LEE WILLIAMS,**
Appellant,

**v.**

**THE STATE OF TEXAS,**
Appellee.

---

### *ANDERS* BRIEF

---

COMES NOW, Noel D. Cooper, court-appointed counsel for Appellant, RONNY LEE WILLIAMS, in the above numbered cause, and files this "*Anders* Brief" and would show this Honorable Court as follows:

### STATEMENT OF THE CASE

*Nature of the Case.* Appellant was charged by two indictments and was tried on four felonies: aggravated robbery, burglary of a habitation, assault on a public servant, and possession of a controlled substance. The case was filed in the 145TH District Court under Cause Numbers F1320424 and F1521685.

*Course of Proceedings.* On May 1, 2013, a jury was selected, and evidence was opened on May 18, 2015, and closed on May 19, 2013. Arguments were heard on May 19, 2015, and the punishment phase took place that day.

*Trial Court Disposition.* The jury found Appellant guilty of all four counts. Appellant was sentenced to 20 years for possession of controlled substance, 70 years for aggravated robbery, ten (10) years for the assault on a public servant, and eight (8) years for the burglary of a habitation.

## ISSUES PRESENTED

Potential Issue 1: Was the evidence is legally sufficient to support Appellant's?

Potential Issue 2: Was Appellant's trial counsel was ineffective in his representation of the Appellant during the jury trial?

## STATEMENT OF FACTS

Prior to opening the evidence, Appellant was sworn in and the plea bargain offer was placed on the record, and Appellant insisted that he wanted a jury trial. RR 3:7-8.[1]  The Rule was invoked. RR 3:9. Appellant pleaded "not guilty" to the charges read to the jury in the indictments.  RR 3:14-15. Appellant's trial counsel waived making an opening statement prior to the State's case-in-chief. RR 3:22.

---

[1] Because the two Reporter's Records are identical, references to the trial transcript are designated "RR" for each case.

## Guilt-Innocence Phase

### Keith Hawkins

The State's first witness was Keith Hawkins, an officer with the Nacogdoches Police Department ("NPD"). RR 3:22-23. Mr. Hawkins testified that it was the policy of NPD to take all persons on whom a TASER had been used to the hospital so medical personnel can remove the TASER barbs and inspect the small wounds. RR 3:32. On September 11, 2013, Mr. Hawkins was working as a police sergeant for NPD. RR 3:35. A call came in for a burglary/robbery, and he was the first officer on the scene. RR 3:36-37. When he arrived, two men, Mr. Flanagan and Mr. Goad, were there and Mr. Flanagan kept saying "I almost had him." RR 3:37. The scene of the alleged crime was the residence of Eugene Morgan. RR 3:39. When got out of the unit, Mr. Flanagan and Mr. Goad informed him that their employer had been attacked and gave him a description of the assailant. RR 3:40. Mr. Hawkins checked on the injured person, Mr. Bright, who had a laceration on his face. RR 3:40. Appellant was described as a black male with no shirt and white shorts. RR 3:40. Mr. Hawkins believed that the Appellant had left his shirt at the scene of the crime. RR 3:42. He also discovered shoes at the scene, and Appellant was not wearing shoes when he was found. RR 3:42-43.

After securing the scene, a suspect was located across the street from the scene of the crime. RR 3:45. The suspect was hiding in a child's playhouse, trying to conceal himself. RR 3:45. When he arrived at the location, Appellant was on the top level of the playhouse. RR 3:47. Mr. Hawkins, along with two other officers, Keith Finchum and Nick Stewart, attempted to take Appellant into custody, but he was swinging and kicking at them. RR 3:48. Mr. Hawkins noticed that Appellant was wearing dark Under Armour-type shorts, and there was a white pair of shorts on the ground next to the playset. RR 3:50-51. Appellant was saying that he was the Lord and then that he was the Devil. RR 3:51-52. After several minutes of trying to talk Appellant down, the decision was made to use a TASER. RR 3:52. Appellant was struck with the TASER, but he just pulled the barbs out. RR 3:53. He was then hit with a second TASER, and he pulled those barbs out, too. RR 3:3-54. While Mr. Hawkins was reaching down for another TASER, Mr. Finchum was struck in the face by Appellant. RR 3:54. The third time Appellant was struck with a TASER also did not work. RR 3:54. The decision was made to go up and physically grab Appellant, and then Appellant jumped off of the playset. RR 3:55-56. When Appellant landed on the ground, he was immediately taken into custody. RR 3:56. At

the jail, Appellant remained noncompliant and had to be placed into a restraint chair. RR 3:57. Appellant was identified by Mr. Hawkins. RR 3:60.

*Nick Stewart*

Nick Stewart was employed by NPD on September 11, 2013. RR 3:64-65. He was assigned to the Street Crimes Unit when the call came in for a burglary in progress. RR 3:65-66. When he reached the area of the crime, two witnesses pointed to Appellant who was standing at the top of a treehouse. RR 3:67. Appellant was only wearing underwear. RR 3:70. His first thought was that Appellant had possibly been using drugs. RR 3:71. The officers tried to get Appellant to surrender, but they decided they had to enter the treehouse. RR 3:71. Mr. Stewart entered first, followed by Mr. Finchum and later Mr. Hawkins. RR 3:72. The officers tried to get Appellant to surrender and comply, but Appellant would not, so Mr. Stewart tried to grab Appellant by the leg. RR 3:72. When that did not work, the officers decided to use a TASER. RR 3:72-73. The TASER was ineffective. RR 3:73. The officers tried using a TASER on Appellant multiple times. RR 3:73-74. While Mr. Finchum was trying to reload his TASER, Appellant swung his right hand and hit Mr. Finchum in the face with a closed fist. RR 3:75-76. During the incident in the treehouse, Appellant was threatening to urinate on the officers. RR 3:84.

*Walter McKee*

Walter McKee was an officer with the Nacogdoches Police Department. RR 3:90. On the date of the incident, Mr. McKee responded to a burglary call to assist in locating the assailant. RR 3:91. Mr. McKee was one of the last officers to arrive at the treehouse. RR 3:92. He was handed a pair of white shorts by Mr. Stewart, and when he searched the shorts he found a vanilla extract bottle in a black bag which he knew was a common carrying vessel for users of PCP because the dark, tinted bottles protect the PCP from being degraded by sunlight. RR 3:93. Mr. McKee did not open the bottle because he was afraid of coming in contact with PCP, and it is the policy of the Nacogdoches Police Department to not try to field test suspected PCP. RR 3:95-96. Mr. McKee took the bottle back to the evidence locker at the headquarters of the Nacogdoches Police Department. RR 3:97.

Appellant's trial counsel stipulated that the substance in the bottle was PCP. RR 3:98-99. Appellant's trial counsel also stipulated to the laboratory report that the bottle contained 10.11 grams of phencyclidine, PCP. RR 3:103. Finall, Appellant's trial counsel stipulated to the admissibility of the medical records of Keith Finchum from September 11, 2013. RR 3:105.

*Roy Harrison*

Roy Harrison was a nurse in the emergency room at Nacogdoches Memorial Hospital, RR 3:108, and he was working as a nurse on September 11, 2013. RR 3:110. Mr. Harrison knew Mr. Finchum, because Mr. Finchum had worked security at the hospital. RR 3:110. Mr. Finchum came to the ER complaining of facial pain after being struck in the face, and his face was visibly red and swollen. RR 3:111.

*Theodore Flanagan*

Mr. Flanagan was a resident of Nacogdoches who knew Morgan Bright. RR 3:115. He met Mr. Bright while he was homeless and staying at Godtel in Nacogdoches because Mr. Bright would pickup Mr. Flanagan to work on his property while he was a Godtel resident. RR 3:116. Mr. Flanagan was working for Mr. Bright on the date of the accident. RR 3:118. Will, who now lives in Minnesota, was working there, too. RR 3:116-17. Mr. Flanagan and Will were clearing brush when a Hispanic boy told them that someone was at Mr. Bright's house, and then later they could hear Mr. Bright calling for them. RR 3:118-19. While walking back, Mr. Flanagan saw Mr. Bright's legs go up in the air and then come down, so he and Will started running toward Mr. Bright. RR 3:119. When they got to Mr. Bright, Appellant was there wearing nothing but his shorts, and he jumped the

fence. RR 3:119-20. Mr. Bright's face was bloody. RR 3:121. He saw Appellant hitting Mr. Bright. RR 3:122.

*Morgan Eugene Bright*

Morgan Eugene Bright was a retired resident of Nacogdoches. RR 3:126. On September 11, 2013, he had taken a load of wood to the dump, and a neighbor told him that he had someone in his house. RR 3:129-30. He thought it was someone trying to buy a car or car parts, so he told his helpers to finish loading up his truck. RR 3:131. When Mr. Bright arrived at his house, he did not see a car parked in his driveway, but the door was open on the west end of the house, and he saw someone inside his home. RR 3:132. Mr. Bright was 99% sure that Appellant was the person who was in his house, but Appellant was 30 to 35 pounds heavier at the time of trial than the man in his house. RR 3:141. The man in his house was taking food out of the freezer. RR 3:134. When Mr. Bright asked the man to put the food back, the man confronted him and kept asking, "Are you the devil?" RR 3:135. Mr. Bright walked about half the way to where his helpers were working and yelled that he needed some help. RR 3:136. While he was outside, the man had removed his shirt and shoes which he had been wearing, but he was still wearing his white shorts. RR 3:139-40. Mr. Bright went back inside and the man assaulted him. RR 3:136-37. While being

assaulted, Teddy yelled at the man, and then he quit assaulting Mr. Bright. RR 3:138. At the time of the incident, Mr. Bright was 66 years old, and he had been on social security disability since 2012. RR 3:138. The police recovered the shirt and shoes. RR 3:139. Mr. Bright lost nine (9) teeth because of the assault. RR 3:140.

### *James Buckingham*

James Buckingham was a medical doctor specializing in psychiatry. RR 4:6. Dr. Buckingham examined Appellant for insanity. RR 4:7. Appellant told Dr. Buckingham that he had used PCP on September 11, 2013, and he knew what he did was wrong. RR 4:13. Dr. Buckingham testified that voluntary consumption of drugs would nullify any insanity defense. RR 4:15. Appellant did not provide Dr. Buckingham with any indication that he had not voluntarily used PCP on September 11, 2013. RR 4:16. The circumstances of the offense suggested led Dr. Buckingham to conclude that Appellant was not insane at the time of the offense. RR 4:18. Dr. Buckingham diagnosed Appellant as having a psychotic disorder. RR 4:18. Appellant could have believed that Mr. Bright was the devil. RR 4:20. Appellant entered Mr. Bright's house to get a drink to cool off. RR 4:22. Dr. Buckingham did not believe that the offenses on September 11, 2013, would have happened if Appellant had not been smoking PCP. RR 4:24.

### Frank Murphy

Frank Murphy was a psychiatrist in private practice who specialized in forensic psychiatry. RR 4:26. Dr. Murphy examined Appellant in October 2014. RR 4:27. Appellant admitted to using PCP on the date of the incident, and he did not say that he ingested the PCP involuntarily. RR 4:31-32. Appellant was diagnosed with schizophrenia, and violence amount a schizophrenic patient is uncommon. RR 4:33. Dr. Murphy did not see any evidence that Appellant did not know that his actions were wrong. RR 4:35.

### Appellant

Appellant chose not to testify and did not present any evidence during guilt or innocence. RR 4:42.

### Punishment Phase

During the punishment phase, the State and Appellant's trial counsel stipulated to a driving while intoxicated conviction in 2010, a driving while license invalid conviction in 2006, a possession of marijuana conviction in 2006, an evading arrest conviction in 2006, a second-offense driving while intoxicated conviction in 2012, a conviction for failure to stop and render aid in 2012, a felony conviction for delivery of marijuana in 2004, a felony conviction for credit card abuse in 2010, a felony conviction for evading arrest in 2012, and three convictions for failure to appear in 2006. RR 5:7-

9. The State and Appellant's trial counsel also stipulated that Appellant was the same person about whom the State's first three witnesses would be testifying. RR 5:12.

### *Robert Collier*

Mr. Collier was employed for almost four years by the Nacogdoches Police Department. RR 5:13. On July 4, 2013, Mr. Collier came in contact with Appellant while doing a medical assist call as a police officer. RR 5:14. At the call, he found Appellant in a back bedroom, incoherent and thrashing about. RR 5:15. When entering the house, Mr. Collier could smell the chemical odor of PCP. RR 5:15-16. Appellant had been smoking PCP and had ingested some and smoked methamphetamines earlier in the day. RR 5:17. Appellant was taken to the hospital because it was feared he had overdosed. RR 5:17.

### *Jonathan Durham*

Jonathan Durham was employed by the Nacogdoches Police Department as a patrolman. RR 5:18. On August 30, 2013, Mr. Durham responded to a welfare check involving Appellant. RR 5:19. Appellant was passed out in the street, and he admitted to smoking PCP, and he was arrested for public intoxication. RR 5:20.

*Brett Ayers*

Brett Ayers worked as a police officer for the Nacogdoches Police Department. RR 5:21-22. On August 21, 2013, he responded to a call regarding a suspicious person where he found Appellant on the porch of the caller's residence, and Appellant appeared to be intoxicated. RR 5:22-23. Mr. Ayers smelled a chemical that he associated with PCP. RR 5:23. Appellant was arrested for public intoxication. RR 5:24.

*Appellant*

Appellant did not take the stand or present any evidence during the punishment phase of the trial. RR 5:25-26.

## SUMMARY OF THE ARGUMENT

In compliance with the requirements of *Anders v. California*, 396 U.S. 738, 744, 87 S.Ct. 1396, 1400 (1967) and *High v. State*, 573 S.W.2d 807 (Tex. Crim. App. 1978), the undersigned attorney states that he has diligently reviewed and evaluated the entire record and investigated all possible grounds for appeal, but his review and investigation have revealed no error to bring to the Court's attention. Counsel would respectfully show the Court that the instant appeal would be wholly frivolous and without merit and that appellate counsel should be permitted to withdraw. *Id.*

Matters considered by appellate counsel in reaching this conclusion are set forth above as well as below in additional detail.

In reaching the conclusion that this appeal is without merit, Appellate Counsel advances two possible appellate issues which could possibly be raised. Those issues reference possible trial errors consisting of: (1) the evidence was legally and factually insufficient to support the jury's finding that the Appellant was in possession of a controlled substance under one gram; and (2) the Appellant's trial counsel failed to provide effective assistance of counsel denying the Appellant a fair trial.

## ARGUMENT AND AUTHORITIES

### Standard for *Anders* Brief.

After a thorough review of the record, Appellant's counsel is unable to find any errors which he, in good faith, can urge which warrant a reversal of the sentences handed down by the trial court. Counsel is aware that he has a duty to advance arguable grounds of error. *Anders v. California*, 386 U.S. 736, 87 S.Ct. 1396, 19 L.Ed.2d 493 (1967). There are two possible or potential errors to investigate on appeal, but research reflects that both legal issues are frivolous based upon standing case and statutory law. The following is the general review of the record considered by the Appellate Counsel in reaching this conclusion:

1. The Complaint and Information. The Appellant's indictments are in the proper form. CR 7; CR2 6;[2] *Peck v. State*, 923 S.W.2d 839 (Tex. App.—Tyler 1996, no pet.). There are no errors concerning the charging instrument. *Ieppert v. State*, 908 S.W.2d 217 (Tex. Crim. App. 1995).

2. Pre-Trial Motions and Hearings. Several pretrial motions were filed. Initially, Appellant's competency was questioned and he was deemed incompetent to stand trial by the trial court. CR 11-12. Upon regaining competency, CR 32-37, Appellant's trial counsel requested that he be tried by two different psychiatrists on the issue of insanity; CR 38-39, 46-47; and Appellant's trial counsel gave notice of the insanity defense. CR 40-41. There were no errors occurring during the pretrial proceedings. *Espinosa v. State*, 853 S.W.2d 36 (Tex. Crim. App. 1993).

3. Trial Motions. There were no trial motions filed by either party. CR *passim*, CR2 *passim*. Appellant's trial counsel made no objections.

4. Jury Selection. The *voir dire* was recorded. RR 2:1. Appellant's trial counsel made no objections during *voir dire* and no errors were noted or preserved. RR 2:*passim.*

---

[2] "CR" shall reference the Clerk's Record in F1320424, and "CR2" shall reference the Clerk's Record in F1521685.

5. The Guilt /Innocence Phase.

a. The State & Appellant's Opening Statement. The State's opening Statement appears in the record, RR 3:15, and there were no defense objections during the State's opening statement. RR 3:*passim.* Examination of the State's opening statement reveals that it was in proper form, not subject to objection, and without legal error. Appellant's trial counsel did not give an opening statement following the State's, RR 3:22 and because Appellant elected to not testify, Appellant's trial counsel gave no testimony at the introduction of evidence from Appellant. RR 4:*passim.*

b. The State's Evidence. The State called eight (8) witnesses in addition to introducing 15 exhibits during the guilt-innocence phase.

c. Objections. Appellant's trial counsel made no objections during the State's case-in-chief. A reading of the record fails to reflect any glaring errors in the failure to make any other objections to the evidence and testimony by the State.

d. The Defendant's Evidence. The Appellant's trial counsel did not call any witnesses during the guilt/innocence phase of the trial and did not offer any exhibits. All of the Courts rulings appear to be proper. No error occurred and no error was preserved.

e. The Guilt/Innocence Charge. The Guilt/Innocence charge is contained in the record to which there were no objections. RR 4:42-43.

f. The State's Guilt/Innocence Closing Argument. The State's Guilt/Innocence arguments appear in the record. RR 4:76. No defense objection was made during the State's guilt/innocence argument. State's argument revealed nothing improper. *Bryson*, 820 S.W.2d at 198-99.

g. The Defense's Guilt/Innocence Closing argument. The defense's guilt/innocence argument appears in the record. RR 4:74. There were no objections during defense's argument. No error occurred and no error was preserved. . *Bryson*, 820 S.W.2d at 198-99.

h. The Guilt/Innocence Verdict of the Jury. The Guilt/Innocence verdict of the jury appears in the record. CRS 28. Examination of the verdict reveals that it is in proper form. The defense made no complaint in the record regarding the form or verdict, and accordingly, no errors occurred and none were preserved. *Bryson*, 820 S.W.2d at 198-99.

6. The Punishment Phase. Appellant elected to have the jury assess punishment. CR 56. The sentence was not unreasonable. The record fails to reflect any error of law by the trial court in the rulings. *Bryson*, 820 S.W.2d at 198-99.

7. <u>Sufficiency of the Evidence.</u> In reviewing the legal sufficiency of the evidence, a court of appeals shall not set aside a jury verdict unless it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996). If a person were to provide a Cliff's Notes version of the trial, it might read, "Appellant abuses dissociative drug, burgles an elderly person's home, robs and severely injures the elderly person after being discovered, flees [*not very far*] from the crime scene to a treehouse where he assaults a police officer, and is found to have possessed that same dissociative drug."

8. <u>Ineffective Assistance of Counsel.</u> Ineffectiveness of counsel is usually difficult to determine upon direct appeal. The court of appeals must indulge in a strong presumption in favor of avoiding a finding of ineffective assistance and the burden is onerous. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *McFarland v. State*, 928 S.W.2d 482 (Tex. Crim. App. 1996). Appellant must show that counsel's performance was deficient (below the objective standard of reasonableness) and that but for this deficiency, the result of the proceeding would have been different. The court of appeals will indulge in a strong presumption of reasonableness in counsel's conduct, and examine the trial as a whole, considering error in trial strategy only if counsel's actions are without plausible basis. *Davis v.*

*State*, 930 S.W.2d 765, 767 (Tex. App.—Houston [1st Dist.], pet. ref'd.). If there exists any plausible basis for counsel's actions, the court of appeals may not speculate on reasons for that action when the record contains no evidence for the actions. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). This was not a complicated case. It appears from the record that the Appellant's trial counsel was not ineffective.

### *Potential Issue 1: Was the evidence is legally sufficient to support Appellant's convictions?*

<u>Argument & Authorities</u>

<u>*Standard of Review*</u>

Legal sufficiency of the evidence "is an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia.* 443 U.S. 307, 316 (1979). The standard of review is whether, when viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* at 319; *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). This standard is the only standard that a reviewing court will apply in determining whether the evidence is sufficient to support each

element of the offense which the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d, 893, 912 (Tex. Crim. App. 2010). The appellate court will consider all evidence admitted, whether proper or improper. "Every fact need not point directly or independently to the defendant's guilt [citation omitted]. A conclusion of guilt can rest on the combined cumulative for of all incriminating circumstances." *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to that testimony. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).

Legal sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge, one that "accurately sets out the law, is authorized by the indictment, does not necessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The charge should not merely quote the elements of the offense listed in the statute, but should list the statutory elements "as modified by the charging instrument." *Gollihar v. State*, 46 S.W.3d 243,

254 (Tex. Crim. App. 2001). "A hypothetically correct charge has its basis in the indictment allegations." *Id.* at 255.

In deciding whether or not evidence in a given case is legally sufficient, the court must look at all of the evidence adduced at trial to determine if viewing all the evidence impartially, it must set aside the verdict because it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis*, 922 S.W.2d 126; *Stone v. State*, 823 S.W.2d 375 (Tex. App.—Austin 1992, pet. ref'd, untimely).

*The evidence was legally sufficient.*

The charge included jury questions on Aggravated Robbery, Assault on a Public Servant, and Burglary of a Habitation, CR 61, as well as Possession of a Controlled Substance in the amount of four grams or more but less than 200 grams. CR2 10. A person commits aggravated robbery if he intentionally or knowingly threatens of places another in fear of imminent bodily injury or death and causes bodily injury to a person 65 years of age or older. TEX. PENAL CODE §§ 29.02, 29.03. The State is not required to prove that a completed theft occurred. *White v. State*, 671 S.W.2d 40, 41-42 (Tex. Crim. App. 1984). A person commits the offense of Assault on a Public Servant if he intentionally, knowingly, or recklessly causes bodily injury to another who the actor knows to be a public servant.

TEX. PENAL CODE § 22.01(a)(1),(b)(1). A person commits the offense of Burglary of a Habitation if the person, without the effective consent of the owner, enters a habitation with the intent to commit theft. TEX. PENAL CODE § 30.02(a)(1). A person commits the offense of possession of a PCP if he intentionally or knowingly possesses a PCP. TEX. HEALTH & SAFETY CODE §§ 481.102(8), 481.115.

The easiest case to analyze is the case against Appellant for possession of PCP. Appellant's trial counsel conceded that at the time Appellant was arrested that he was in possession of PCP, RR 3:98-103, as the Controlled Substance Analysis Laboratory Report clearly indicated that Appellant was in possession of PCP. CR 6:16. Appellate counsel suspects that this was in an effort by Appellant's trial counsel, not to shirk his responsibility to defend Appellant, but to set up an argument for the mitigation of punishment was will be discussed below.

The aggravated robbery and burglary cases rested upon two witnesses, Theodore Flanagan and Morgan Bright. Both men testified that a person was in the residence of Mr. Bright, and Mr. Flanagan testified that it was undoubtedly Appellant who was assaulting Mr. Bright inside Mr. Bright's home. Mr. Bright testified to both his age, the fact that Appellant

was assaulting him, including his injuries, that Appellant did not have permission to be in his home, and that Appellant was stealing from him.

The case against Appellant for Assaulting a Public Servant was equally straight forward. While officers of the Nacogdoches Police Department were trying to arrest and detain Appellant, he assaulted one of the officers by striking him in the face. This evidence supported the jury's verdict, and since the jury is the sole trier of fact and any inconsistencies in the evidence are deemed to have been resolved by the jury in favor of their verdict, it is unlikely that Appellant could prevail on the issue of legal sufficiency of the evidence to support the verdict.

***Potential Issue 2: Was Appellant's trial counsel was ineffective in his representation of the Appellant during the jury trial?***

<u>Argument & Authorities</u>

<u>*Standard of Review.*</u>

The Appellant would no doubt criticize Trial Counsel for many of his decisions throughout the trial. However, in this appeal attacking Trial Counsel on ineffectiveness will most likely be fruitless. The adequacy of counsel's representation is evaluated using the two-part standard articulated by *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068 (1984) and adopted by *Hernandez v. State*, 988 S.W.2d 770,

772 (Tex. Crim. App. 1996). *Sanchez v. State*, 222 S.W.3d 85, 90 (Tex. Crim. App. 2006). The test is: 1) whether the attorney's performance fell below an objective standard of reasonableness under prevailing professional norms, and 2) whether there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings could have been different. *Id.* Reasonable probability is a probability sufficient to undermine confidence in the outcome. *Hernandez. v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986).

The reviewing court begins with the presumption that counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *Sanchez*, 222 S.W.3d at 90. The party challenging counsel's effectiveness has the burden to rebut the presumption by presenting evidence. *Id.* at 90.

### *Appellant's trial counsel was not ineffective.*

In the present case, there is nothing in the record to indicate that but for the trial counsel's performance, the outcome of the case at hand would have been different as required by the second prong of the *Strickland* test. *Strickland v. Washington*, 466 U.S. 688, 694-95, 104 S.Ct. 2052, 2068 (1984). *Strickland* requires that, to show ineffective assistance of counsel, an appellant must prove that his attorney's representation fell below an

objective standard of reasonableness under the prevailing professional norms and that there is a reasonable probability that, but for those unprofessional errors, the result of the proceeding would have been different. *Id.* at 694-95.

Ineffectiveness of counsel is usually difficult to determine upon direct appeal. The court of appeals must indulge in a strong presumption in favor of avoiding a finding of ineffective assistance and the burden is onerous. *Strickland v. Washington*, 466 U.S. 668 (1984), and *McFarland v. State*, 928 S.W.2d 482 (Tex. Crim. App. 1996). The Appellant must show that counsel's performance was deficient (below the objective standard of reasonableness) and but for that deficiency, the result of the proceeding would have been different. The court of appeals will indulge in a strong presumption of reasonableness in counsel's conduct, and examine the trial as a whole, considering error in trial strategy only if counsel's actions are without plausible basis. *Davis*, 930 S.W.2d at 767. If there exists any plausible basis for counsel's actions, the Court of Appeals may not speculate on reasons for that action when the record contains no evidence for the actions. *Jackson*, 877 S.W.2d at 771.

Court's have consistently stated that it looks to the totality of representation and not isolated instances when judging the effectiveness of

counsel, as follows: "Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *McFarland*, 928 S.W.2d at 483. Counsel's performance is judged by "the totality of the representation" and "judicial scrutiny of counsel's performance must be highly deferential" with every effort made to eliminate the distorting effects of hindsight. *See Id.; Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *see also Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (an appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel).

A Defendant in entitled to rely upon counsel to make an independent examination of the facts and circumstances for guilt/innocence. *Ex Parte Briggs*, 187 S.W.3d 458, 469 (Tex. Crim. App. 2005). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 466-67. When determining whether counsel was ineffective, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's

judgment's." *Id.* at 467 (citing *Wiggins v. Smith*, 539 U.S. 510, 521-22, 123 S.Ct. 2527, (2003)). The same standard applies to punishment. *See Freeman v. State*, 167 S.W.3d 114, 117-18 (Tex. App.—Waco 2005, no pet.) (failure to investigate client's mental health issues ineffective assistance); *Rivera v. State*, 123 S.W.3d 21, 31 (Tex. App.—Houston [1st Dist] 2003, pet. ref'd) (trial counsel's failure to make reasonable investigation fell below professional standard); *Milburn v. State*, 15 S.W.3d 267, 270-71 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (trial counsel's failure to offer any mitigating evidence was ineffective assistance); *see also Ex Parte Gonzales*, 204 S.W.3d 391, 398-400 (Tex. Crim. App. 2006) (trial counsel ineffective for failing to investigate mitigating evidence).

In the instant case, the trial transcript and record reflect that the Appellant's trial counsel demonstrated an excellent knowledge of the facts of the case and handled the representation of his client in an effective fashion to the extent that any claim of ineffective assistance of counsel would most certainly fail particularly when considering the totality of the circumstances of the trial as a whole.

Without any testimony from Appellant's trial counsel regarding his strategy, we are left to make assumptions based on the trial transcript, and that evidence leads appellate counsel to surmise that Appellant's trial

counsel was attempting to minimize Appellant's punishment exposure. The offenses happened. That much was not contested at trial, and was most likely incontrovertible. The question then for Appellant's trial counsel would then be to give a jury an explanation as to *why* Appellate committed the offenses in order to minimize Appellant's exposure during punishment. In this case, the record establishes that at the beginning of the proceedings after indictment that Appellant was not competent to stand trial. CR 11-12. Once Appellant regained his competency, his trial counsel initially sought to raise an insanity defense, but the evidence would not support that defense. CR 44-45, 50-54. Thus, Appellant's trial counsel apparently attempted to mitigate Appellant's exposure though a process of questioning most of the witnesses about Appellant's apparent mental state.

As a further potential issue to show ineffective assistance of counsel by the Appellant's trial counsel, it has been held that appellate counsel is required to undertake an independent investigation of the facts including those that bear upon punishment.

During the punishment phase of the trial, Appellant chose not to take the stand in his own defense, and this was likely caused in part by his mental illness. It is apparent from the record that Appellant's trial counsel investigated Appellant's mental health issues and other mitigation

evidence, but that evidence available did little to stem the tide against the overwhelming evidence offered by the State. First, not only was Appellant competent to stand trial, CR 32-37, but his trial counsel had requested that he be examined for insanity, and two experts reported that he was sane at the time of the offenses. CR 44-45, 50-54. More importantly, Appellant was able to testify about his mental health issues during the punishment hearing. RR 5:26.

In the event that the Appellant believes that his trial counsel rendered ineffective assistance by failing to object to the severity of the punishment rendered by the trial court in this case, the record fails to support such a contention or claim. Trial counsel did not object to the severity of the sentence assessed, either at the conclusion of the hearing or in a motion for new trial, and based upon the decision of the jury, there were no grounds upon which to appeal that required preserving. Therefore, there is nothing to argue on appeal in that regard, because counsel did not preserve error. *Mercado v. State*, 718 S.W.2d 291, 296 (Tex. Crim. App. 2006).

Even if counsel had preserved error regarding the severity of the sentence, the argument would be frivolous. There are two types of punishment error regarding the severity of the sentence: (1) cruel and unusual punishment, and (2) disproportionality. This sentence is not cruel

and unusual. The punishments assessed by the jury suggest that they assessed punishments for each offense specific to each crime, with the most severe punishment for the aggravated robbery, likely due in part to the severity of the injuries suffered by Mr. Bright. Further, evidence was presented during the punishment phase of the trial that in addition to the charged offenses, Appellant had a very lengthy criminal record as well as numerous previous encounters with law enforcement preceding the trial due to Appellant's abuse of PCP. Given the facts presented during the trial, it was within the sole discretion of the trial court to determine the Appellant's sentence. Punishment within the statutory range is generally not considered to be cruel and unusual punishment. *Jackson v. State*, 989 S.W.2d 842, 845 (Tex. App.—Texarkana 1999, no pet.) (citing *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973)). Also notable is the fact that the jury did not sentence Appellant to life in prison.

Even if a sentence is not cruel and unusual, it may still be grossly disproportionate to the crime. To determine whether a sentence is grossly disproportionate, the appellate court first looks to the gravity of the offense and the length of the prison sentence. If it determines from this analysis that the sentence was disproportionate, the appellate court then considers: (1) sentences imposed on other criminals in the same jurisdiction, and (2)

sentences imposed for the same crime in other jurisdictions. *Krumboltz v. State*, 945 S.W.2d 176, 177 (Tex. App.—San Antonio 1997, no pet.). In the current appeal, there is nothing to indicate that the threshold issue of disproportionality has been satisfied. Appellant was fully aware of the range of punishment available to the jury during the punishment phase of the trial, meaning, 5 to 99 years, or life, with up to a $10,000.00 fine for the aggravated robbery, and Appellant had already been admonished that he turned down a 20-year plea bargain offer. RR 3:7-8. Therefore, any disproportionality argument would fail along with any ineffective assistance of counsel claim pursuant to the record.

The Appellant's trial counsel fully and thoroughly represented the Appellant during the guilt/innocence phase of the trial. After listening to the testimony of the State's witnesses, who were thoroughly and rigorously cross-examined by Appellant's trial counsel, the jury found the Appellant guilty as charged in the indictments. The Appellant's trial counsel clearly demonstrated knowledge of his client's case supporting his investigation and knowledge of the facts associated with the charge against his client. Due to the fact that eyewitness testimony linked Appellant to the crime, there is nothing in the record to indicate that "but for the trial counsel's performance," the outcome of the case at hand would have been different as

required by the second prong of the *Strickland* test. *Strickland*, 466 U.S. at 694-95, 104 S.Ct. at 2068. *Strickland* requires that, to show ineffective assistance of counsel, an appellant must prove that his attorney's representation fell below an objective standard of reasonableness under the prevailing professional norms and that there is a reasonable probability that, but for those unprofessional errors, the result of the proceeding would have been different. *Id.* at 694-95. Given the vigorous representation of his client by the Trial Counsel, it is unlikely that any other representation of the Appellant would have resulted in a different outcome. As a result, it is not likely that the Appellant would prevail on this issue.

Further, As the Court of Criminal of Appeals has previously stated, rarely will the record on direct appeal be sufficient to show that counsel's conduct was so deficient as to meet the first prong of *Strickland* as the "reasonableness of counsel's choices often involves facts that do not appear in the appellate record." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Strickland v. Washington*, 466 U.S. 668 (1984). An application for a post-conviction writ of a habeas corpus is the more appropriate vehicle to raise and develop ineffective assistance of counsel claims. *Id.* Consequently, Appellate Counsel can not find within the Appellate Record sufficient specific facts to challenge Trial Counsel's decisions at trial. Trial

Counsel's reasons for the decisions made at trial do not appear in the Appellate Record.

In conclusion, it is Appellate Counsel's professional opinion based upon a thorough evaluation over the record that there was no reversible error reflected by the record. Therefore, Appellate Counsel's professional opinion is that this appeal is without merit and frivolous. No other potential points of ineffective assistance of counsel may be found in the record.

## CONCLUSION

Because Appellate Counsel, after a thorough review of the record, is unable to identify any potentially meritorious points on appeal, it is the professional opinion of the undersigned counsel that the appeal is frivolous and without merit. *See Anders v. California*, 386 U.S. 738 (1967); s*ee Johnson v. United States*, 360 F.2d 844, 846 n. 2 (D.C. Cir. 1966) (Burger, J. concurring): ("An attorney owes his first duty to the court. His oath requires him to be absolutely honest even though his client's interests may seem to require a contrary course.")

Counsel has executed an attached Certificate of Service certifying that he is sending Appellant a copy of his Motion to Withdraw, and a copy of this Brief, with an explanation of Appellant's further rights regarding his appeal. *High v. State*, 537 S.W.2d 807 (Tex. Crim. App. 1978).

## PRAYER

Counsel has conducted a professional evaluation of the record in this cause and reluctantly concluded that as a matter of professional judgment, the record contains no reversible error and no jurisdictional defects are present. Where counsel concludes that there are no arguable grounds for reversal, he is required to present a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced as has been done in the instant case. *Anders v. California*, 386 U.S. 738 (1967); *Gainous v. State*, 436 S.W.2d 137 (Tex. Crim. App. 1969). The record does not support a meritorious argument for reversal of the jury trial's conviction and punishment sentence of the Appellant. Pursuant to the requirements of *Anders v. California*, 386 U.S. at 744-45, and *High v. State*, 573 S.W.2d at 813, counsel has documented that he has furnished Appellant with a copy of this brief, contemporaneous with the filing of this brief, and has notified Appellant that he has the right to review the record and to file any brief that he deems appropriate. Counsel therefore respectfully requests that the Court accept his brief, and he be allowed to withdraw from representation of Appellant upon disposition of the appeal.

Respectfully submitted,

/s/Noel D. Cooper
Noel D. Cooper
Texas Bar No. 00796397
LAW OFFICES OF NOEL D.
COOPER
117 North St., Suite 2
Nacogdoches, Texas 75961
Telephone: (936) 564-9000
Telecopier: (936) 715-6022
ATTORNEY FOR APPELLANT,
RONNY LEE WILLIAMS

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9.4(i)(3), I certify that this document is computer generated and contains 6, 836 words based on a computer word count.

/s/Noel D. Cooper
Noel D. Cooper

## CERTIFICATE OF SERVICE

I certify that I delivered a copy of this *Anders* Brief to each attorney of record or party in accordance with the Texas Rules of Appellate Procedure on November 16, 2015, at the addresses and manners below.

Nicole LoStracco
State Bar No. 00792906
Nacogdoches County District Attorney
101 W. Main, Suite 250
Nacogdoches, Texas 75961
Telephone: (936) 560-7766
Fax: (936) 560-6036
Email:nlostracco@co.nacogdoches.tx.us
**Via Electronic Service**

RONNY LEE WILLIAMS
TDCJ-ID # 02001514
Stiles Unit
3060 FM 3514
Beaumont, TX 77705
**Via First Class Mail and CMRRR**

/s/Noel D. Cooper
Noel D. Cooper